**Phillip PRATT, By His Mother and Next Friend, Barbara Vann**

v.

**BOARD OF EDUCATION OF FREDERICK COUNTY and Gordon M. Anderson, Superintendent of Schools, Frederick County.**

Civ. No. K–80–2195.

United States District Court, D. Maryland.

Nov. 7, 1980.

Effective nunc pro tunc as of Oct. 24, 1980.

Eleanor Montgomery, Baltimore, Md., for plaintiff.

Charles U. Price, Frederick, Md., for defendants.

FRANK A. KAUFMAN, District Judge.

This case is brought against the Board of Education of Frederick County and Gordon M. Anderson, Superintendent of Schools of that County under 20 U.S.C. § 1401 *et seq.*; 29 U.S.C. § 794; and Md.Ann.Code *Education Article* § 8–401 *et seq.* Pursuant to those statutes, the plaintiff–child seeks to require the defendants to develop an individualized educational program (IEP) which would include, *inter alia*, an individualized disciplinary program.[1]

The facts are almost entirely undisputed. Plaintiff is an emotionally disturbed child who has been identified as handicapped and has received special educational services for several years. During the 1979–80 school year, the child was suspended from school attendance because of one or more incidents involving teachers and/or other students, including, verbal arguments, use of obscene language, refusal to sit in assigned seats, striking a student, uncooperative behavior and refusal to follow directions generally. In September, 1979, the child was placed on probation after one or more of such occurrences, suspended from school attendance for three days on October 1, 1979, further suspended during the middle of October, 1979 for a total period of five days, and placed on extended suspension without school attendance sometime before the end of the month of October, 1979. During the remainder of the 1979–80 school year the child was provided with home teaching by the Frederick County school system.

Beginning in the fall of 1979, the Admission, Review and Dismissal Committee of the Frederick County school system considered the question of what school program should be made available to the child and recommended a level V placement at the Frederick County Learning Center. Level V involves comprehensive special education for the entire school day. The child's mother, represented by the Maryland Advo-

---

1. Initially, plaintiff sought a Temporary Restraining Order. Subsequently, the parties agreed that the plaintiff–child should be permitted to attend a school within the Frederick County school system on a temporary basis pending expedited preparation and submission to this Court of a stipulation of facts and legal memoranda. On October 24, 1980, there was a nonevidentiary, on–the–record hearing held in open Court.

cacy Unit for the Developmentally Disabled, expressed dissatisfaction with that recommendation on the ground that a level V placement was overly restrictive. After a hearing before an impartial Frederick County hearing officer pursuant to 20 U.S.C. § 1415 and the corresponding Maryland statute, Md.Ann.Code *Education Article* § 8–415, that county hearing officer concluded that the child required a level VI residential program, a more restrictive program than level V. The child's mother then sought a hearing before the State Hearing Review Board which determined that level IV services were required [2] and ordered the Frederick County school authorities to perform additional educational assessments as to the needs of the child and to prepare and implement an IEP for the child which IEP was to include, *inter alia*, behavioral objectives.[3] No appeal from that decision of the Review Board was taken by anyone to any other administrative body or to any court.

During the summer of 1980, several persons representing the Frederick County school system, the plaintiff–child's mother and counsel for the plaintiff–child in this case, Eleanor Montgomery, Esq., met a number of times and acted as what are generally referred to as members of an IEP meeting in order to attempt to draw up an IEP pursuant to the said State Board's Order. The members of the IEP meeting reached agreement in part with regard to what should be included in the IEP but before they were able fully to agree or to disagree upon the IEP, the members desig-

nated by the Frederick County school system sought a ruling from the Frederick County school system as to whether one or more provisions in an IEP, and specifically the IEP in this instance, could vary from the provisions of the Policies and Procedures Handbook of the Frederick County school system. The response received from an official of the Frederick County school system, who was authorized so to speak, was that none of the provisions of the IEP in this case should be inconsistent with any of the provisions of the Policies and Procedures Handbook. While the parties agree that that official indicated that the IEP meeting could suggest disciplinary guides in addition to the disciplinary provisions of the Handbook, the parties disagree as to whether that official did or did not state that the IEP could specifically *include* a disciplinary portion as a guide for the application of the provisions of the Policies and Procedures Handbook. In any event, however, the parties agree that that official did indicate that the provisions of the Policies and Procedures Handbook had to be paramount.

After the aforementioned response was received from the Frederick County school system official by the members of the IEP meeting, the within case was instituted by plaintiff. Subject matter jurisdiction is asserted and exists in this case pursuant to 28 U.S.C. § 1331(a).[4] Jurisdiction is also asserted, and may also exist, pursuant to 20 U.S.C. § 1401 *et seq.* and, more specifically, § 1415(e)(2).[5] Jurisdiction, although not so

---

**2.** Level IV services encompass regular school activity but also require up to six hours per day of special education instruction. Bylaws of the Maryland State Board of Education § 13.04.01.-06.E.3.d.

**3.** Originally, the State Board ordered that the IEP be completed before the end of the 1979–80 school year. However, because the Review Board decision was not rendered until May 20, 1980, there was not time for the IEP to be completed before the end of the school year. For that reason, the Chairman of the State Board amended the Board's earlier order to require that the IEP be completed before the beginning of the 1980–81 school year.

**4.** This case arises under one or both of 20 U.S.C. § 1401 *et seq.* and 29 U.S.C. § 794. *See*

*Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). There would appear little question but that the value of the educational program being sought by plaintiff exceeds $10,000.00.

**5.** *See Monahan v. State of Nebraska*, 491 F.Supp. 1074, 1086 (D.Neb.1980); *Sherry v. New York State Education Department*, 479 F.Supp. 1328, 1333 (W.D.N.Y.1979). There is, however, a question as to whether or not jurisdiction exists in a federal district court with regard to a case brought under 20 U.S.C. § 1401 *et seq.* before complete exhaustion of state administrative remedies. *See Harris v. Campbell*, 472 F.Supp. 51 (E.D.Va.1979); *Stubbs v. Kline*, 463 F.Supp. 110, 114 (W.D.Pa. 1978); *Monahan v. State of Nebraska, supra.*

asserted, may additionally and independently exist under 28 U.S.C. § 1343(3).[6] However, since jurisdiction is present under § 1331(a), the other possible jurisdictional bases are not relied upon herein.[7] Pendent jurisdiction exists insofar as plaintiff seeks relief under the Education Article of the Maryland Code.[8]

During the recent in–Court proceeding, as a result of colloquy among Court and counsel, the following procedures were agreed upon:

(1) Each and every IEP, including the IEP in this case, must be individually tailored to meet the needs of the individual handicapped child. Subject to that requirement, the provisions of the Policies and Procedures Handbook may be made fully applicable in any given case, including this case.

(2) The members of the IEP meeting will reconvene as promptly as they can and in any event no later than November 4, 1980 and will diligently apply themselves to attempt to agree upon all of the provisions of the IEP. To the extent that those members are not able to agree upon each and every provision of the IEP, they will seek to agree upon as many of the provisions thereof as they can and, in addition, will prepare in final form two or more separate versions of any parts of the IEP concerning which they are not able to agree. Thereafter, either plaintiff or defendants will have the right to appeal to the State Hearing Review Board under the provisions of applicable laws and regulations and to seek a final order from that Review Board concerning what should or should not be included in the IEP. If either plaintiff or defendants are not satisfied with the presence in or the absence from the Order of that Review Board, of any provision or provisions thereof, any of them will have the right to seek review either in this Court or in any other Court having jurisdiction in the premises.

(3) The within case will be marked "Closed" and will be deemed and considered dismissed without prejudice with the parties to bear their own respective costs provided, however, that any of the parties shall have the right, on a timely basis, to request this Court to reopen the file in this case and to consider such application for relief as any of the parties desire to make.[9]

Accordingly, the within case will be dismissed, without prejudice, with the parties to bear their own respective costs.

---

In this case, even if the parties themselves did not so agree, as they do, *see infra* at p. 235, further state administrative proceedings would appear desirable, whether or not they are required. As of this date, the combination of the state and county administrative proceedings held to date adds up to, from the plaintiff's point of view, a denial of the right of the plaintiff child to an appropriate educational program.

**6.** An implied private cause of action to enforce the provisions of 29 U.S.C. § 794 may be available to plaintiff herein. *Davis v. Southeastern Community College*, 574 F.2d 1158 (4th Cir. 1978), *rev'd on other grounds*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) (in reversing, the Supreme Court expressly declined to decide the private right of action question, 442 U.S. *supra* at 404 n.5, 99 S.Ct. at 2366 n.5, 60 L.Ed.2d 980); *Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7th Cir. 1977); *Boxall v. Sequoia Union High School District*, 464 F.Supp. 1104 (N.D.Cal.1979) (Peckham, C. J.), and cases cited therein. 28 U.S.C. § 1343(3) is arguably an appropriate jurisdictional base for a suit to enforce those provisions. *See New York State Ass'n, Etc. v. Carey*, 466 F.Supp. 479, 482 (E.D.N.Y.1978). As is the case, however, as to 20 U.S.C. § 1401 *et seq.*, exhaustion of state administrative remedies may be a predicate to the exercise of jurisdiction under section 1443 and the assertion of an implied private cause of action pursuant to section 794. *See Boxall v. Sequoia Union High School District, supra.*

**7.** See ·n.5 and n.6 *supra.*

**8.** Seemingly, any claim stated by plaintiff under the applicable provisions of that body of state law involves the same transactions and will require essentially the same determinations as under 20 U.S.C. § 1401 *et seq.* and 29 U.S.C. § 794.

**9.** The opportunity to reopen this case in the event any party is not satisfied with regard to the merits of the administrative disposition hereof shall also include the opportunity to the plaintiff to apply to this Court for the award of such attorney's fees, if any, as may be appropriate, in the event that the parties are not able to agree themselves with regard to the payment of attorney's fees to counsel for plaintiff.