Renee PATSEL, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA BOARD OF EDUCATION, et al., Defendants.

Civ. A. No. 81–2126.

United States District Court,
District of Columbia.

Sept. 15, 1981.

Matthew Bogin, Washington, D. C., for plaintiffs.

Julia Sayles, District of Columbia Corp. Counsel, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This is an action by a learning disabled child, Renee Patsel, and her parents, David and Mary Patsel, seeking an order to compel defendant District of Columbia Board of Education and the individual defendants sued in their official capacities to hold a due process hearing for the purpose of determining whether defendants' proposed placement of the child at the Prospect Learning Center is appropriate to meet Renee's unique educational needs.

Initially a temporary restraining order had been requested by the plaintiffs. Due to the exigencies involved, including commencement of the school year on the very date of the hearing, the parties agreed that the application for preliminary relief be converted into a hearing on the merits. The necessity of formal responsive pleadings was, therefore, waived and the motion for a temporary restraining order has been deemed withdrawn as moot in light of the full hearing.

Jurisdiction exists pursuant to P.L. 96–486 (Dec. 1, 1980), 28 U.S.C. § 1343 (Supp. III 1979), the Education for All Handicapped Children Act ("EHA"), 20 U.S.C. § 1401 *et seq.* (1976 and Supp. III 1979), and the Rehabilitation Act of 1973, *as amended by* section 504 of the Rehabilitation, Comprehensive Services and Developmental Disabilities Act of 1978, 29 U.S.C. § 794 (Supp. III 1979).

It is uncontroverted that Renee Patsel is a learning disabled eleven year old child who has been receiving special education for several years. During school year 1979–80, she attended the St. Maurice School, a private special education school. Her tuition was paid by the District of Columbia Public Schools ("DCPS"), the state education agency responsible under the EHA for providing special education to handicapped children, pursuant to 20 U.S.C. § 1401(7) (1976). For the school year 1980–81, DCPS, with the concurrence of the Patsels, moved Renee to the Prospect Learning Center ("Prospect").

As Mrs. Patsel states in her affidavit, however, "We made the wrong decision. Shortly after Renee started attending Prospect, we noticed her regressing in the educational area and more importantly, emotionally." Although the parent did not at first express her concerns to the school staff, during the second half of the school year she communicated to the school personnel her concerns, as well as those concerns of a psychologist who had worked with Renee for years.

On May 18, 1981, Mrs. Patsel met with the staff of the Prospect Learning Center for the annual development of an individual education program ("IEP") for the school year 1981–82. This plan was to outline the components of an appropriate education for Renee. At that meeting Mrs. Patsel again reiterated with intensity, she avers, the concerns she had expressed earlier concerning the appropriateness of Renee's attendance at Prospect.

On June 18, 1981, defendants sent to plaintiffs a "Notice of Continuing Special

Education Services" which stated: "Your child's record has been reviewed and it has been determined that for the 1981–82 school year, he/she will continue in the present program at Prospect Learning Center." The notice did not inform the parents of the need to file any form, nor state any way, by which a dissatisfied parent could challenge the defendants' decision.

Because the Patsels disagreed with the placement, they retained counsel to represent them in what is referenced as a "due process hearing." On July 7, 1981, counsel requested that due process hearing on the issue of whether defendants' proposed educational placement was appropriate to meet their child's needs.

The hearing was scheduled for August 11, 1981, and the hearing officer sent a "Notice to Attend Due Process Hearing" to Azalee Harrison, the director of Prospect. On August 3, 1981, plaintiffs' counsel, for logistical reasons, asked that the hearing be postponed. A letter confirming the postponement was sent by defendants' representative to plaintiffs' counsel asking for a new date for the hearing. Nonetheless, on August 11, plaintiffs' counsel received a letter which, in effect, cancelled the proposed hearing. That letter informed counsel that since the defendants were "unaware" of the Patsels' desire to change Renee's program,

no formal evaluation procedure had been initiated for the child. Accordingly, the letter continued, "the public schools will not be ready, nor are they required to participate at a hearing until they are given an opportunity to complete the formal evaluation/placement process." After several telephone conversations between the parties, plaintiffs' counsel received a letter again denying the right to a hearing.

The plaintiffs' request to the court is forthright: they ask that defendants provide a "due process" hearing in which their objections to Renee's continued placement at the Prospect Learning Center would be fully ventilated. In support of their demand for a hearing, plaintiffs note that the Education for All Handicapped Children Act and the regulations promulgated thereunder require that the parents or guardian of a child be afforded a hearing whenever they have a complaint about the school district's proposal to change or refusal to change a child's educational placement, or any matter concerning the child's placement.[1]

Plaintiffs further claim that without the hearing they are being denied due process guarantees mandated by the Rehabilitation Act of 1973, *as amended by* the Rehabilitation, Comprehensive Services and Developmental Disabilities Act of 1978.[2]

---

1. Section 615 of this Act, 20 U.S.C. 1415(b)(2)(1976) provides: "Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall have an opportunity for an impartial due process hearing . . . ." Paragraph (1) provides in pertinent part that

   The procedures required by this section shall include, but shall not be limited to—

   \* \* \* \* \* \*

   (C) written prior notice to the parents or guardian of the child whenever such agency or unit—
   (i) proposes to initiate or change, or
   (ii) refuses to initiate or change,
   the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child;

   \* \* \* \* \* \*

   (E) an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a

   free appropriate public education to such child.
   20 U.S.C. § 1415(b)(1)(1976)
   Regulation 45 C.F.R. 121a.506(a) (1980) states that:
   A parent or a public educational agency may initiate a hearing on any of the matters described in § 121a.504(a)(1) and (2).
   45 C.F.R. 121a.504(a)(1) and (2) (1980), in turn, mandate notice with the school district in cases in which it:
   (1) Proposes to initiate or change the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child, or
   (2) Refuses to initiate or change the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child.

2. 29 U.S.C. § 794 (Supp. III 1979) provides: No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of

Finally, plaintiffs rely on *Mills v. Board of Education of District of Columbia,* 348 F.Supp. 866 (D.D.C.1972) to support their plea for a hearing.[3]

The defendants, on the other hand, urging dismissal of the cause, contend the Court is without jurisdiction to order the hearing since the administrative process has not been exhausted. The appropriate procedure, the defendants assert, is essentially as follows.[4]

When a child is already enrolled in a special education program (as Renee was at the Prospect Learning Center during the 1980–81 school year) the defendants contend that any objection to her continued enrollment in the same program or at the same school must be raised in one of two ways. First, defendants argue, the parents should attend the IEP conference and voice their views. Second, if the school decides that, despite the parents' misgivings, the child should continue in the same program or school, the parents may then object formally by submitting a request for evaluation, using defendants' Form 205. Although the Form 205 is the one used to initiate a request for evaluation of a child not yet part of the special education system, the defendants aver that this form is also the appropriate form for a request of the type made by the Patsels—even though Renee already was in the system. Defendants contend that were a Form 205 completed by the Patsels it would have been treated differently, since Renee was already familiar to the school authorities and the information on the form would have indicated that a change of placement rather than a new placement was requested. Presumably the parents' submission of the Form 205 request would have given the defendants notice of their objections, and all parties would have had time to study or resolve the matter without a due process hearing.

The defendants argue that they require the Patsels to follow such a procedure even under the language in the statutory scheme described above and in *Mills,* treating the defendants' decision to continue the same placement for Renee to be a case not covered by the requirement of a hearing, and hence amenable to other procedure, such as

his handicap, be excluded from the participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

It is not disputed that Renee Patsel and the defendants both fall under this section.

Regulation 34 C.F.R. § 104.36 (1980) provides that:

A recipient that operates a public elementary or secondary education program shall establish and implement, with respect to actions regarding the identification, evaluation, or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services, a system of procedural safeguards that includes notice, an opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure. Compliance with the procedure safeguards of section 615 of the Education of the Handicapped Act is one means of meeting this requirement.

3. The *Mills* court decreed that

13e. Whenever defendants take action regarding a child's placement, denial of placement, or transfer ... the following procedures shall be followed.

(1) Notice required hereinbefore shall be given in writing by registered mail to the parent or guardian of the child.

(2) Such notice shall:

\* \* \* \* \* \*

(d) inform the parent or guardian of the right to object to the proposed action at a hearing before the Hearing Officer.

348 F.Supp. at 880.

4. While the constraint of time limited available evidence and there was no evidence *per se* provided, on this point the Court accepts counsels' assertions that the "routine" procedure would be as expressed herein.

the submission of a Form 205. In short, the defendants contend that the *continuation* of placement is neither a proposal to change nor a refusal to change an educational placement within the meaning of Section 1415, nor an action regarding a child's placement within the meaning of the *Mills* decree, and therefore, the defendants insist, the Form 205 procedure described should be substituted for the due process hearing that otherwise would be required.[5]

Such a procedure now contemplated by defendants for Renee is impermissible. It evidences defendants' misunderstanding of the statutory scheme governing the Patsels' concerns and could serve in practice only to prevent these parents and their child from receiving the due process guaranteed them.

The statutory scheme presented above already embraces a due process hearing of the very sort which plaintiffs request. The Court in *Mills v. Board of Education of District of Columbia, supra*, likewise envisioned the due process hearing as the proper forum in which to raise complaints about a child's placement. Defendants' attempt to distinguish objections to a child's continued placement from objections to a new or a changed placement is a meaningless exercise in semantics, as far as the review procedures warranted by each are concerned. If Renee, as a learning disabled child, is to make progress toward surmounting her handicap, or receiving the education to survive her handicap, her placement in a special education program must be open to prompt review whenever it appears that the program in which she is enrolled may no longer suit her particular disability. Certainly, continuing a child in a particular program after his or her disability has changed poses precisely the same problems as do moving a child from an appropriate program into an unknown one or changing a successful one. As such, to provide different review procedures as defendants have done contravenes the intended purpose of the due process hearings as articulated in the statutory scheme and in *Mills*, that is, to ensure that the child is placed in a program appropriate to his or her individualized needs, followed by a placement tailored to that program.

It is indeed difficult to imagine why a continuation of Renee Patsel's placement at the Prospect Learning Center over the objections of her parents should not be treated like any other refusal to change her placement, which *would* require a hearing. The only possible distinction which defendants wish to draw is that there has been no formal refusal of a formal request for a change of placement. This is the step which they wish to add to the administrative procedure before granting the Patsels the right to a hearing. Yet requiring the plaintiffs in the instant matter to make such formal request and await a formal refusal before they may gain the right to a hearing serves but a minimal administrative interest to defendants that cannot be justified in light of the serious potential harm to the child's progress that the inevitable resulting delay would cause. Indeed, it is the hearing itself, and not some pre-hearing procedure that is designed to serve as the forum for airing complaints and receiving input from the parents, the child, and the school regarding placement. *See, Mrs. A. J. v. Special School District No. 1*, 478 F.Supp. 418, 431 (D.Minn.1979); *Lora v. Board of Education of the City of New York*, 456 F.Supp. 1211, 1227 (E.D.N.Y. 1978).

Certainly defendants must be afforded reasonable notice of any parent's desire for a change of placement before being required to act thereupon. The defendants argue that such notice must be presented them either via an objection at the IEP meeting or by Form 205 request. Such a procedure, however, is both unnecessary and, practically speaking, impossible. A

---

5. While it is unclear whether defendants would completely substitute the Form 205 procedure for a hearing, and such a hearing might be granted were the parents' Form 205 complaint rejected, at the very least, defendants assert that an additional step must be added to the process (submission of a Form 205 request and its rejection) before the parents of a child in Renee's position will be entitled to a hearing.

parent cannot realistically object to the child's placement at the IEP meeting when the purpose of the IEP meeting is to formulate a program—part of which involves a placement—for the child and the final decision on that program is not mailed to the parents until weeks thereafter. In the instant case, the Patsels did indicate throughout the second half of the school year and at the IEP meeting their dissatisfaction with Renee's progress at the Prospect Learning Center and their desire that a change be made. Although it is unclear how forcefully the Patsels demanded a change in placement, obviously it is unreasonable to require them to demand a change of a placement decision not yet made.

It further would not be reasonable for this court to require the Patsels to submit a Form 205 some time after they received the notice informing them of defendants' decision to keep Renee at the Prospect Learning Center. The defendants did not notify the Patsels of their decision until June 18, 1981. None of the parties have suggested that this decision came unusually late; on the contrary, it may have been rendered following the normal time in which a decision for the next school year's placement is made after an IEP meeting, but nonetheless it is unnecessary for this Court to make that determination. The notice of placement did *not* inform the Patsels that filing a Form 205 was the proper procedure for objecting to their child's placement. The Patsels sought the assistance of counsel, who correctly concluded that a hearing should be requested, which the Patsels did. Yet during the period in which the hearing request had been made, accepted once, rescheduled and then finally refused by the defendants, no mention was ever made of the Form 205 procedure the defendants now argue should have been followed. Defendants cannot at this late date insist that the Patsels begin anew this likely slow and arduous process before their complaints can be heard by someone other than the same school officials to whom they already have complained in some measure since the beginning of the previous school term. To do so would effectively take away the due process rights they are guaranteed under the EHA, including the right to a hearing of grievances by an impartial third party.[6] If the right to a due process hearing is to have any meaning at all, the hearing must be made available at a time in which the parents' objection to their child's placement will be constructive rather than merely disruptive, which is the case when the hearing comes mid-way through a school year or after the school year is well underway. It is simply not realistic for defendant to require the Patsels to submit a Form 205 now, nor would have it been realistic to have required it even immediately upon receipt of the June 18 notice if there were to be any chance of resolving the questions of Renee's placement before the start of the following school year. The due process hearing, on the other hand, is an efficient method and the proper one for addressing all issues either the parents or defendants wish to raise.

Accordingly, this court will order that a hearing be held within five days from the date of its order to address the issues posed by the plaintiffs in their complaint. At this hearing each party shall be allowed to present arguments and material in support of, or in opposition to, Renee's placement in Prospect School. Suggestions for alternative programs which may be more appropriate to meet the child's needs should also be received by the hearing officer to provide a full hearing and alternatives, if any there be. Examination of a sole proposed placement in a hearing is equivalent to a hearing devoid of choice and, in some instances, devoid of merit.

Although typically the hearing officer is then allowed ten days to make a decision, the urgency of this situation requires that the hearing officer report his/her findings to the plaintiffs within five days of the hearing.

6. 20 U.S.C. 1415(b)(2) (1976) provides: "No hearing conducted pursuant to the requirements of this paragraph shall be conducted by an employee of such agency or unit involved in the education of the child."

Should the parties be unable to reach an agreement concerning attorneys' fees, they may seek further relief upon the requested reopening of this case for such purpose.

It is, therefore, by the Court, this 15th day of September, 1981,

ORDERED, that

1. Defendants' oral motion to dismiss this cause for lack of jurisdiction be and it hereby is denied.

2. The complaint of plaintiffs Renee Patsel, David Patsel and Mary Patsel seeking a due process hearing be and hereby is granted, said hearing to be held by defendants' hearing officer within 5 days from this date in accordance with this memorandum opinion, with a decision by that hearing officer to be reported to plaintiffs within 5 days thereafter.

3. The plaintiffs' motion for a temporary restraining order be and it hereby is deemed withdrawn, as moot.

The cause stands dismissed.