**Cassandra FOSTER, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA BOARD OF EDUCATION, et al., Defendants.**

**Civ. A. No. 81–0965.**

United States District Court,
District of Columbia.

Sept. 30, 1981.

Michael J. Eig, Matthew B. Bogin, Washington, D. C., for plaintiffs.

Julia L. Sayles, Washington, D. C., for defendants.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

This action is before the court on cross motions for summary judgment. Jurisdiction exists over all statutory claims under 28 U.S.C.A. § 1331 (Supp. 1981), 28 U.S.C. § 1343 (Supp. III 1979), 29 U.S.C. § 794 (Supp. III 1979), and 20 U.S.C. § 1415(e)(2) (1976).

Cassandra Foster is a twelve year old learning disabled child, who received public school special education services during the 1979–80 school year at the Adams Learning Center in the Adams Community School. At the end of the 1979–80 school year, Cassandra's placement and her educational program at Adams were not reviewed at a meeting with her mother, despite the statutory mandate that such a meeting be held.[1]

Dissatisfied with her daughter's progress at Adams, Ms. Foster sought a change of placement to the Kingsbury Lab School, a private facility for learning disabled chil-dren in the District of Columbia. On July 10, 1980, Ms. Foster informed defendants in writing of her wish to transfer Cassandra from Adams to Kingsbury. She sent defendants a form entitled "Request for Admissions, Transfers, Enrollment and Remaining." Although not the proper form by which to request a change of special education placement, the defendants nonetheless acknowledged receipt of her request on July 14. On July 17, defendants sent Ms. Foster a "Notice of Continuing Special Education Services" which stated that the school district intended to continue Cassandra's placement at the Adams Learning Center for the 1980–81 school year. The notice did not tell Ms. Foster how to object to the continued placement, nor did it make any mention of Ms. Foster's request that Cassandra be moved to Kingsbury. On July 23, Ms. Foster wrote to the defendants to inquire as to the status of her transfer request. Defendants responded by a letter, dated August 1, which explained that Ms. Foster had failed to file a proper form, but that her request would nonetheless be transferred to the appropriate person. Defendants never asked her to file any new forms.

In mid to late August, Ms. Foster retained counsel and thereafter placed Cassandra at the Kingsbury Lab School at the beginning of the 1980–81 school year. After the beginning of the school year, Ms. Foster received yet another letter from defendants, dated September 5, which acknowledged her transfer request, as well as indicated the name and telephone number of an associate director of special education services to whom her request had been referred.

During the fall of 1980, Ms. Foster's counsel attempted to schedule a due process hearing at which to request that defendants pay for Cassandra's schooling at Kingsbury

1. 34 C.F.R. §§ 300.343–300.345. Under these provisions, it is the *defendants'* responsibility to hold a review meeting and to make reasonable efforts to assure the parents' presence at such a meeting.

It should be noted that 45 C.F.R. § 121a.1 *et seq.* (1980) has been redesignated as 34 C.F.R.

§ 300.1 *et seq.* as of November 21, 1980. The subsection numbers have not been changed (e. g., 45 C.F.R. § 121a.300 is now 34 C.F.R. § 300.300). All citations in this opinion refer to the new sections.

for the 1980–81 school year. The hearing was held on January 21, 1981, but plaintiffs were informed that they could not address the issue of payment for Kingsbury, since they had voluntarily removed Cassandra from the public school rolls and placed her in a private school at their own expense. Plaintiffs appeal that decision to this court.

An examination of the issues is in order. At the beginning of the 1980–81 school year, plaintiffs found themselves in a difficult position. Ms. Foster felt strongly that another year at Adams would not benefit her daughter but concluded that placement at Kingsbury would. Defendants had not provided her with an opportunity to voice her views at a review meeting, since no such meeting was ever held. Defendants had, however, arrived at a decision to continue Cassandra's placement at Adams despite Ms. Foster's request for a change of placement to Kingsbury. Since the notice of defendants' intent to continue Cassandra's placement at Adams did not indicate where a parent should turn to contest that decision,[2] Ms. Foster simply wrote a letter reiterating her request that the defendants change her daughter's placement. Defendants failed to give any definitive response to her request, beyond acknowledging receipt of her letters and providing the names and telephone numbers of those school authorities to whom her request had been transferred. In short, from the plaintiffs' viewpoint, there could be a reasonable assumption that the transfer was being discussed somewhere in the defendants' bureaucracy, but the plaintiffs were also confronted with the imminent start of the school year. Ms. Foster, in a classic dilemma, took matters into her own hands and placed Cassandra at the Kingsbury Lab School. This response, risking subsequent rejection, was fatal to the plaintiffs' claim now before this court.

Cassandra Foster's special education placement is governed by the Education for All Handicapped Act of 1975 (EHA), 20 U.S.C. § 1401 et seq. (1976 and Supp. III 1979), with the federal regulations promulgated thereunder, 34 C.F.R. § 300.1 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Supp. III 1979), with its regulations, 34 C.F.R. § 104.1 et seq. (1980). The procedural framework is provided primarily by the former, and incorporated by the latter. In addition, the District of Columbia Board of Education has its own Rules implementing these statutory procedures. Still further rights and safeguards have been mandated by *Mills v. Board of Education of District of Columbia*, 348 F.Supp. 866 (D.D.C.1972). This statutory scheme specifically prohibits the plaintiffs in the instant case from the self-help of placing the child in a private school and then later seeking reimbursement of tuition.

The EHA mandates that when a parent wishes to contest the child's educational placement, the student must remain in his or her current placement during the pendency of the proceedings. 20 U.S.C. § 1415(e)(3) provides:

During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.

The corresponding regulation, 34 C.F.R. § 300.513(a), provides:

During the pendency of any administrative or judicial proceeding regarding a complaint, unless the public agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her present educational placement.

**2.** As this court recently held in *Patsel v. District of Columbia Board of Education*, 522 F.Supp. 535 (D.D.C.1981), a decision to *continue* a placement may be challenged in a due process hearing like any other decision to change or refusal to change a placement. Hence, the notice provided Ms. Foster was clearly deficient in this regard; it should have advised her of her right to request a due process hearing.

Finally, the United States District Court for the District of Columbia, in "The Plan for the Education of Handicapped and Exceptional Children in the District of Columbia" (the "Plan"), approved on December 6, 1977, by the late Joseph C. Waddy, Judge, pursuant to his continuing jurisdiction in *Mills v. Board of Education of District of Columbia, supra,* has also mandatorily formalized the parents' and defendants' duty to maintain the *status quo*:

> During the pendency of any hearing, administrative appeal or judicial proceeding regarding a complaint or challenge to a proposed/denied identification, evaluation, or placement/change of placement in an educational program, the child/student involved in the complaint shall remain in his or her present educational placement unless the agency and the parent/surrogate or guardian otherwise agree. (The Plan at 41, Paragraph 22.)

In the instant case, the *status quo* was Cassandra's placement at the Adams Learning Center, which she had attended during the 1979–80 school year.[3]

The result of electing to violate the *status quo* without the defendants' agreement is clear. 34 C.F.R. § 300.403, promulgated pursuant to the EHA, states:

> (a) If a handicapped child has available a free appropriate public education and the parents choose to place the child in a private school or facility, the public agency is not required by this part to pay for the child's education at the private school or facility. However, the public agency shall make services available to the child as provided under §§ 121a.450–121a.460.

> (b) Disagreements between a parent and a public agency regarding the availability of a program appropriate for the child, and the question of financial responsibility, are subject to the due process procedures under §§ 121a.500–121a.514 of Subpart E.

34 C.F.R. § 104.33(c)(4), promulgated under Section 504 of the Rehabilitation Act of 1973, also provides:

> If a recipient has made available, in conformance with the requirements of this section and § 104.34, a free appropriate public education to a handicapped person and the person's parents or guardian choose to place the person in a private school, the recipient is not required to pay for the person's education in the private

**3.** Plaintiffs dispute the way in which defendants placed Cassandra at the Adams Learning Center. During the 1978–79 school year, Cassandra had attended the Oyster Elementary School as a regular student but her mounting academic difficulties resulted in evaluation by the defendants in the spring of 1979. It was determined that she suffered from a learning disability. In June of 1979, defendants held an Individualized Education Program (IEP) conference which Cassandra's mother attended.

During the summer of 1979, plaintiffs received no placement proposal. At the beginning of the school year that September, Ms. Foster, at the suggestion of one of Cassandra's teachers, placed her daughter at the Adams School. Defendants later proposed this same placement in a "Notice of Proposed Change in Educational Program" dated September 17, 1979, which was mailed to the Fosters sometime thereafter. Plaintiffs suggest that defendants' placement was merely a formal acquiescence in the action which the mother and Cassandra's teachers had already taken.

For the purposes of the motions before this court, however, the crucial fact, which neither party disputes, is that when plaintiffs were informed of the proposed placement at Adams, they were provided notice of their right to contest the placement at a due process hearing. The September 17 notice stated clearly: "This is a notice of a recommended change in the educational program of your child. Before this can be made, you have the right to question the recommendation at a hearing before a hearing officer. As this notice explains, you have the right to an independent evaluation of your child and the right to be represented at the hearing by any person of your choice.... If you are not satisfied with the proposed program, you are entitled by law to a hearing before a hearing officer."

Plaintiffs did not challenge the Adams placement at that time. Even if plaintiffs did not necessarily want to change the Adams placement, but merely wished to ascertain whether the defendants had made any real placement decision beyond acquiescence in the placement already made by the mother, the proper way to raise such an issue would have been through a request for a due process hearing. No such request was made. We cannot question, therefore, the appropriateness of the Adams Learning Center placement for Cassandra Foster during the 1979–80 school year.

school. Disagreements between a parent or guardian and a recipient regarding whether the recipient has made such a program available or otherwise regarding the question of financial responsibility are subject to the due process procedures of § 104.36.

It is not disputed that Ms. Foster voluntarily placed Cassandra at the Kingsbury Lab School before resorting to the due process hearing procedures or seeking relief from this court. The compassion the court feels for a parent's extraordinary burden of compelled decision in a like situation cannot be converted to a denial to the defendants of their due process rights under the law, however. Plaintiffs' request for reimbursement of the 1980–81 tuition for the Kingsbury Lab School must be denied.[4]

It is imperative to note here, that while judgment will be entered for the defendants in this case, the provisions above need not be construed as an absolute bar to all retroactive tuition payments.[5] Self-help may be sanctioned, indeed requisite, in some exceptional cases, with unique factual occurrences, where the parent has exhausted all other avenues for relief or other considerations of justice compel it.[6] Here, plaintiffs' resort to voluntary action was unwarranted. While plaintiffs were without question in an unenviable position in August 1980, with the advent of the school year and the school authorities apparently still considering Ms. Foster's transfer request, they should have pursued the matter

with defendants by telephone and letters (more diligently than the record indicates) before unilaterally placing Cassandra at Kingsbury. The plaintiffs also could have made an immediate, urgent demand for a due process hearing. The parties dispute whether the initial request for a hearing was made in mid-September or late November, but it is unchallenged that no hearing request was made until the school year was at best several weeks underway and, at the maximum, nearly three months into the academic year. Finally, plaintiffs could have sought immediate injunctive relief from this court, albeit be confronted with a possible defense of failure to exhaust administrative remedies. Plaintiffs regrettably took none of these steps to press their cause. Instead, weeks or months passed before reimbursement of tuition for the school of their choice was requested.

Plaintiffs base their request for tuition on their statutory right to a free and appropriate education for Cassandra.[7] Although the Kingsbury Lab School has an excellent reputation, no determination has ever been made of its appropriateness for Cassandra Foster in 1980–81. Had the plaintiffs acted promptly in the summer of 1980, such a determination might have been made by defendants or this court. Plaintiffs, therefore, not having pursued avenues of relief which might have resulted in a determination that Kingsbury was appropriate, may not now demand that Kingsbury's tuition

---

**4.** *Accord, Stemple v. Board of Education of Prince George's County*, 623 F.2d 893 (4th Cir. 1980), *cert. denied*, 450 U.S. 911, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981); *Monahan v. State of Nebraska*, 491 F.Supp. 1074 (D.Neb.1980), *aff'd* 645 F.2d 592 (8th Cir. 1981).

**5.** Accordingly, defendants' contention that any child who is no longer on the public school rolls lacks standing to request a due process hearing is wholly without merit. The purpose of the due process hearing procedures is to assure that parents' grievances are addressed quickly and efficiently by an impartial third party. One of the myriad of claims which a hearing may address is a parent's claim that she and her child have been so aggrieved by the actions of the school authorities that removal of the child from the public schools was a reasonable course of action. The plaintiffs in this case

certainly had a right to a hearing on their claim. To the extent that the Hearing Officer's decision in this case denies plaintiffs a hearing for "lack of standing" it is disapproved. The Hearing Officer was correct, however, in denying plaintiffs the relief they requested.

**6.** *E. g., Parker v. District of Columbia Board of Education*, E.H.L.R. 551:267 (D.D.C.1979) (plaintiff placed in private school, at defendants' expense, since IEP twice found inadequate in due process hearings). Citation of E.H.L.R. refers to the Education for Handicapped Law Reporter published by C.R.R. Publishing Company, Washington, D.C.

**7.** *See* 20 U.S.C. § 1401 *et seq.* (1976 and Supp. III 1979).

expenses for Cassandra be borne by the defendants.

It is therefore, by the Court, this 30th day of September, 1981

ORDERED, that

1. Plaintiffs' motion for summary judgment be and it hereby is denied.

2. Defendants' motion for summary judgment be and it hereby is granted.

3. Judgment is entered in favor of the defendants, District of Columbia Board of Education, Eugene Kinlow, James Guines, Doris Woodson and Michael Snipes and against Cassandra Foster and Jean Foster, plaintiffs.