Renee PATSEL, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA BOARD OF
EDUCATION, et al., Defendants.

Civ. A. No. 81–2126.

United States District Court,
District of Columbia.

Jan. 21, 1982.

Matthew B. Bogin, Washington, D.C., for plaintiffs.

Julia L. Sayles, Asst. Corp. Counsel, Dist. of Columbia, Washington, D.C., for defendants.

MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiffs brought this action to challenge the District of Columbia Public Schools' refusal to provide them with due process, in the form of a hearing, to contest the special education placement of their child, Renee Patsel. Renee is a learning disabled child who had attended the defendants' public school program at the Prospect School during the 1979–80 school year. She received special education services at the Prospect Learning Center. Defendants had decided to continue the same placement for Renee during the 1980–81 school year. Since the Patsels objected to this placement decision, they demanded a due process hearing. The defendants, however, refused to provide or attend such a hearing, asserting that a due process hearing was not the proper procedure by which to object to a continued placement.

This Court, in a Memorandum Opinion and Order filed September 15, 1981, (reported at 522 F.Supp. 535 (1981)) rejected the defendants' contention, and held that the plaintiffs' demand for a due process hearing must be honored by the District of Columbia Public Schools as required by the Education for All Handicapped Children Act of 1975, 20 U.S.C. § 1401 *et seq.* (1976 and Supp. III 1979), Section 504 of the Rehabilitation Act of 1973, *as amended by* the Rehabilitation, Comprehensive Services and Developmental Disabilities Act of 1978, 29 U.S.C. § 794 (Supp. III 1979), and the decree in *Mills v. Board of Education of Dis-*

*trict of Columbia,* 348 F.Supp. 866 (D.D.C. 1972). The September 15, 1981, decision also stated specifically that "[s]hould the parties be unable to reach an agreement concerning attorneys' fees, they may seek further relief upon the requested reopening of this case for such purpose." Memorandum Opinion and Order at 10, 522 F.Supp. at 541.

Plaintiffs allege that they have received no response whatsoever to their request for attorney's fees from the defendants and that therefore they are compelled to return to the court for adjudication of this matter. Their attorney's fees request is made upon three separate legal bases: Section 505 of the Rehabilitation Act of 1973 *as amended by* the Rehabilitation, Comprehensive Services and Developmental Disabilities Act of 1978, 29 U.S.C. § 794a(b) (Supp. III 1979), the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1976), and the "bad faith" doctrine. Since fees will be awarded under Section 505, the propriety of a fee award under the remaining two alternative bases need not be reached and will not be discussed further in this opinion.

Plaintiffs assert that the instant action resulted in vindication of their rights under both Section 615 of the Education for All Handicapped Children Act of 1975 ["EHA"], 20 U.S.C. § 1415 (1976), and Section 504 of the Rehabilitation Act of 1973 *as amended by* the Rehabilitation, Comprehensive Services and Developmental Disabilities Act of 1978, 29 U.S.C. § 794 (Supp. III 1979). Section 505 of the latter Act grants the court discretionary authority to award attorney's fees to a party prevailing in a Section 504 claim. Section 505, 29 U.S.C. § 794a(b) (Supp. III 1979), provides:

> In any action or proceeding to enforce or charge a violation of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Plaintiffs argue that since they prevailed in their claim under Section 504, they are eligible for a fee award, at the court's discretion, under Section 505.[1]

Defendants are quick to point out, however, a major complication in plaintiffs' otherwise straightforward request: the EHA does *not* include a provision for attorney's fees. Defendants do not seriously contest that plaintiffs prevailed in this action, but instead assert that plaintiffs prevailed only upon their claims under the EHA, and thus they should not be entitled to fees since the EHA provides none. Defendants argue that the EHA's failure to provide attorney's fees is controlling since the EHA is an exclusive source of rights and remedies in actions involving the due process procedures required for special education placement disputes.

The primary issue to be decided, then, is the significance of the conspicuous absence of an attorney's fee provision in the EHA for plaintiffs' fee claim under Section 505 of the amended Rehabilitation Act. In short, does Section 504 of the Rehabilitation Act, as amended, provide independent substantive rights regarding procedures for special education placement which, when vindicated, allow the court to award fees under Section 505, or is the EHA an exclusive remedy for such claims which denies attorney's fees?

Prior case law considering attorney's fees in this area is inconclusive, at best, and fails to furnish any comprehensive analysis. Of those cases involving rights which arguably arise partly, if not primarily, under the EHA, two decisions have awarded fees, without discussion, under both Section 505 of the amended Rehabilitation Act, 29 U.S.C. § 794a(b) (Supp. III 1979), and the Civil Rights Attorney's Fees Awards Act of

---

**I.** There is precedent for a grant of attorney fees under Section 505 in cases involving the educational placement of handicapped children. *See Harris v. District of Columbia Board of Education,* Civil Action No. 81–1842 (D.D.C., Dec. 23, 1981). The court in that case granted the plaintiffs' request for attorney's fees after they had prevailed on their claim brought under the EHA and the Rehabilitation Act, but did not reach the question of whether a denial of benefits conferred by the EHA necessarily is a violation of the Rehabilitation Act for the purpose of awarding attorney's fees.

1976, 42 U.S.C. § 1988 (1976). *New Mexico Ass'n for Retarded Citizens v. New Mexico*, 495 F.Supp. 391 (D.N.M.1980); *Hilden v. Evans*, Civil Action No. 80–511–RE slip. op. (D.Ore. Nov. 5, 1980). Three have awarded fees under only Section 505 of the amended Rehabilitation Act. *Campbell v. Talladega County Board of Education*, 518 F.Supp. 47 (N.D.Ala.1981); *Tatro v. Texas*, 516 F.Supp. 968 (N.D.Tex.1981); *Pratt v. Board of Education of Frederick County*, 501 F.Supp. 232 (D.Md.1980). Two others have awarded fees under the Civil Rights Attorney's Fees Awards Act of 1976. *Department of Education v. Valenzuela*, 524 F.Supp. 261 (D.Hawaii 1981); *Mattie T. v. Holladay*, 522 F.Supp. 72 (N.D.Miss.1981); *see also Doe v. Marshall*, 622 F.2d 118 (5th Cir. 1980) *cert. den.* 451 U.S. 993, 101 S.Ct. 2336, 68 L.Ed.2d 854 (1981). Finally, two cases have denied fees on either basis. In *Hines v. Pitt County Board of Education*, 497 F.Supp. 403 (E.D.N.C.1980), the court stated simply that

Plaintiff seeks relief not only under the Education of Handicapped Act but also under the Rehabilitation Act, 29 U.S.C. § 701 et seq., and the Civil Rights Act, 42 U.S.C. § 1983 . . . .

Plaintiff contends that because the action was brought under these statutes the Court can, in its discretion, award attorney fees . . . .

The Education of Handicapped Act does not mention attorney fees, and there are no cases considering whether attorney fees are permissible thereunder.

Although plaintiff has sought relief under the other two statutes, it appears to this Court that this proceeding has been treated by plaintiff throughout as being under the Education of Handicapped Act. The relief being granted is under the Education of Handicapped Act which does not authorize the assessment of attorney fees.

*Id.* at 409. The other decision denying fees, *Anderson v. Thompson*, 658 F.2d 1205 (7th Cir. 1981), is the only case found which provides a useful conceptual framework. The question presented in that case, however, was quite different from that in the instant action since the Seventh Circuit considered only a claim for fees under the Civil Rights Attorney's Fees Awards Act of 1976. A violation of Section 504 of the Rehabilitation Act, as amended, had not been alleged in the complaint or raised in the district court. *Id.* at 1217 n.20.

The case law is not without guidance, however. For example, it is clear that attorney's fees may be awarded under Section 505 when a violation of Section 504 rights alone is redressed, as demonstrated by a recent decision in this jurisdiction, *Fells v. Brooks*, 522 F.Supp. 30 (D.D.C.1981). Judge Pratt awarded fees to plaintiffs who had obtained—through a settlement agreement—proper transportation for children attending special education classes. Other decisions in this jurisdiction, though not specifically addressing the issue of attorney's fees, have held that the Rehabilitation Act, as amended, provides substantive rights in the area of special education distinct from, albeit similar to, those afforded by the EHA. In *North v. District of Columbia Board of Education*, 471 F.Supp. 136 (D.D.C.1979), Judge Greene wrote

It is clear that under federal law defendants bear the responsibility for providing plaintiff with residential placement where such placement is appropriate. The Education for All Handicapped Children Act, specifically 20 U.S.C. § 1412(6), vests them with responsibility for administering all educational programs for handicapped children within their jurisdiction, and the regulations . . . specify that when residential care is required, it must be at no cost to the parents. *Defendants' obligations in that regard are also codified in the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and the regulations promulgated thereunder . . . which provide many of the same substantive and procedural rights as are found in the Education for All Handicapped Children Act.*

*Id.* at 139 (emphasis added).

This holding was echoed by Judge Parker in *Capello v. District of Columbia Board of*

*Education,* Civil Action No. 79–1066 (D.D.C. January 23, 1980), who stated that "[u]nder the Education for All Handicapped Children Act, the defendants are obliged to provide ... a free and appropriate individualized education.... *The defendants have a similar obligation under the Rehabilitation Act and its implementing regulations which afford many of the same substantive and procedural rights." Id.* at 4 (emphasis added).[2] Other jurisdictions, also, have recognized the Rehabilitation Act as providing substantive rights involving special education. *E.g., S–1 v. Turlington,* 635 F.2d 342, 350 (5th Cir. 1981) ("Furthermore, section 504 ... provides protections and procedures similar to those of the E.H.A.");[3] *Association for Retarded Citizens in Colorado v. Frazier,* 517 F.Supp. 105 (D.Colo.1981); *New Mexico Ass'n for Retarded Citizens v. New Mexico,* 495 F.Supp. 391 (D.N.M.1980); *see also Tatro v. Texas,* 625 F.2d 557 (5th Cir. 1980) *on remand* 516 F.Supp. 968 (N.D. Tex.1981); *Howard v. Friendswood Independent School District,* 454 F.Supp. 634 (S.D.Tex.1978).

Hence, Section 504 does provide substantive rights which may be vindicated despite a parallel successful claim under the EHA. Since none of the decisions cited above, however, squarely face the issue of exclusivity of the EHA vis-a-vis Section 504 for the purpose of attorney's fees, the analysis should not stop here. Rather, it must look directly to the statutes, the regulations promulgated thereunder, and the legislative and regulatory history of each.

A brief overview of the applicable statutes and regulations will be helpful. Section 504 of the Rehabilitation Act was first enacted in 1973. In 1974, this section was made applicable to non-employment contexts, such as education, through an expansion of the definition of the term "handicapped individual." Before federal regula-

tions were promulgated pursuant to Section 504, however, Congress enacted the EHA in 1975. Thereafter, the Department of Health, Education and Welfare proposed regulations under Section 504, which were adopted in June of 1977. Regulations under the EHA were proposed shortly before the adoption of the Section 504 regulations, and were adopted in October of 1977. Only in 1978, after this entire statutory and regulatory framework was in place, did Congress enact Section 505, the attorney's fees provision at issue here. In order to determine the applicability of Section 505 to the instant case, then, each of these statutes and regulations are to be examined for any indication that the EHA was intended to be exclusive vis-a-vis Section 504, which determination would exclude the plaintiffs here from the attorney's fees provision.

The obvious first step is to look to the EHA and its legislative history for any indication that it was intended to be the exclusive source of rights and remedies for special education placement disputes. Although the EHA itself is silent in this regard, its legislative history gives reason to suspect that Congress thought it was creating a new area of rights separate from those already in existence when it passed the EHA. *See Brown v. GSA,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). "Too long have the needs of these handicapped children been neglected.... The [EHA] promises handicapped children the educational opportunity that has long been considered the right of every other American child." (Remarks of Sen. Randolph, 121 Cong.Rec. 37410 (1975)); "The goal of this legislation is to raise the quality of education for millions of handicapped children to a new standard of excellence and equal opportunity never before envisioned." (Remarks of Sen. Taft, 121 Cong.Rec. 37412 (1975)); "[H]andicapped children no longer

---

**2.** This court also has referred recently to the close ties between the EHA and the amended Rehabilitation Act. *Foster v. District of Columbia Board of Education,* 523 F.Supp. 1142, 1144 (D.D.C.1981); *Davis v. District of Columbia Board of Education,* 522 F.Supp. 1102, 1105 (D.D.C.1981).

**3.** The court also stated that, "the EHA and section 504, as remedial statutes, should be broadly applied and liberally construed in favor of providing a free and appropriate education to handicapped students." *S–1 v. Turlington,* supra, 635 F.2d at 347.

will be left out." (Remarks of Sen. Williams, 121 Cong.Rec. 37413 (1975)).

The Seventh Circuit, in *Anderson v. Thompson, supra,* considered these remarks to indicate that the EHA was exclusive vis-a-vis 42 U.S.C. § 1983, thereby precluding an award of attorneys' fees under 42 U.S.C. § 1988 (1976). *Id.* at 1216. The Seventh Circuit, however, was not persuaded by these remarks alone. The court went on to state that "[t]he most compelling reason" for its conclusion that the EHA provided an exclusive remedy was "that the relief it provides is inconsistent with 1983 relief" because the EHA did not "contain a traditional damage remedy" while Section 1983 did. *Id.* at 1216–17.

In comparing EHA relief with Section 504 relief, though, it is important to note that there is no inconsistency in the type of relief afforded by each. The effectiveness then of either statute is not impaired if both are held concomitantly applicable. Even were we to adopt the Seventh Circuit's approach to the exclusivity question, then, the result in this case need not be the same as that when comparing the EHA with Section 1983. Instead, the only conclusion which can be reached here is that some rhetoric in the legislative history hints at exclusivity, while the "most compelling" factor points toward nonexclusivity. The EHA and its legislative history, therefore, are not particularly determinative.

The regulations promulgated pursuant to the EHA, however, while not wholly illuminating, shed a somewhat brighter light on the matter. As noted above, the regulations for Section 504 were neither proposed nor adopted until after the EHA was enacted. The EHA's regulations, in turn, were first proposed when the Section 504 regulations were in the final stages of preparation. The introduction to the proposed EHA regulations states explicitly that,

4. Part B of the EHA contains Section 615, the due process procedures, with which the instant case is concerned.

5. As to the weight to be accorded the regulations promulgated pursuant to Section 504, *see*

An issue with which the Department is deeply concerned is maintaining consistency between Part B of the Education of the Handicapped Act and regulations being developed under section 504 of the Rehabilitation Act of 1973. . . .

As the regulations being developed under section 504 of the Rehabilitation Act of 1973 are in the process of being finalized at the same time these proposed regulations for Part B of the Education of the Handicapped Act are being published, every effort will be made to have the final regulations for Part B to be consistent in concept, policy, and wherever possible, consistent with the language of the final 504 regulations.[4]

41 Fed.Reg. 56967 (1976). Surely, had the EHA been intended to provide remedies exclusive of those under section 504, the regulations could have so stated. Instead, the regulations were described as creating remedies "consistent" with those of Section 504. Thus, at least on the part of the regulators, the EHA was considered to be consistent with the existence of Section 504 remedies applicable to the same area.

Turning next to the regulations promulgated under Section 504, one must ask whether these regulations reserve for the EHA all special education placement problems, or whether they provide discrete substantive and procedural rights.[5] The Section 504 regulations concerning due process procedures, the focus of the instant case, mention some general requirements but refer largely to the EHA. 34 C.F.R. § 104.36 (1980) provides:

A recipient that operates a public elementary or secondary education program shall establish and implement, with respect to actions regarding the identification, evaluation, or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services, a system of procedural

*generally, Association for Retarded Citizens in Colorado v. Frazier,* 517 F.Supp. 105, 120–23 (D.Colo.1981); *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979).

safeguards that includes notice, an opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure. Compliance with the procedural safeguards of section 615 of the Education of the Handicapped Act is one means of meeting this requirement.

Referral to the EHA procedures, however, does not indicate that Section 504 fails to provide independent and parallel substantive rights. Rather, it simply means that one way to provide the independent due process rights required by Section 504 is adoption of the EHA procedures. Had the regulators understood the EHA to pre-empt the special education placement area, presumably this regulation would have deferred the matter entirely to the EHA or the Section 504 regulations would have been altogether silent with respect to placement dispute procedures. The regulation's referral—but not deferral—to the EHA indicates the intention to create autonomous yet concurrent rights and remedies.

Still further evidence that the Section 504 regulations provide substantive due process rights separate from those afforded by the EHA is found in the explanation of the final version of the Section 504 regulations adopted by the Department of Health, Education and Welfare. The introduction describing the procedural safeguards (Subpart D) states, in a manner very similar to the elucidation of the EHA regulations noted above, that:

> Subpart D is concerned with preschool, elementary, and secondary education. *Its provisions have been closely coordinated with those of the Education for All Handicapped Children Act of 1975 (Pub.L. 94–142).* They require, basically, that recipients operating public education programs provide a free appropriate education to each qualified handicapped child in the most normal setting appropriate. The regulation also sets forth evaluation requirements designed to ensure the proper classification and placement of handicapped children, and due process procedures for resolving disputes over placement of students.

42 Fed.Reg. 22677 (1977) (emphasis added). These regulations, like those of the EHA, clearly reflect the regulators' desire for *coordination* between the two, and not exclusivity.

Appendix A of the Section 504 regulations also notes a change made in the procedural safeguards originally proposed. The original version had totally incorporated the EHA procedures, stating that, "A recipient shall establish and implement . . . the procedural safeguards delineated in . . . the Education of the Handicapped Act . . . ." 41 Fed.Reg. 20309 (1976). *See also* 41 Fed. Reg. 20302 (1976). The regulation finally adopted, however, refers to the EHA procedures as merely "one means" of providing due process. 34 C.F.R. § 104.36 (1980). Appendix A explains the change:

> Because the due process procedures of the EHA, incorporated by reference in the proposed section 504 regulation are inappropriate for some recipients not subject to that Act, the section now specifies minimum necessary procedures notice, a right to inspect records, an impartial hearing with a right to representation by counsel, and a review procedure. The EHA procedures remain one means of meeting the regulation's due process requirements, however, and are recommended to recipients as a model.

In some cases, then, Section 504 rights may be vindicated by obtaining compliance with EHA procedures even if the EHA is not applicable. *See New Mexico Ass'n for Retarded Citizens v. New Mexico, supra.* No indication has been found that the EHA alone must be applied to cases in which the EHA is applicable, i.e. that the two were mutually exclusive. It is accordingly feasible and appropriate to vindicate either or both Section 504 and EHA rights by obtaining compliance with EHA procedures, as occurred in the instant case.

Lastly, close inspection of the attorneys' fees provision itself is in order. The plain

language of Section 505 of the 1978 amendments to the Rehabilitation Act allows the court to award fees "[i]n any action or proceeding to enforce or charge a violation of a provision of this subchapter." 29 U.S.C. § 794a(b) (Supp. III 1979). It·does not state that fees should not be awarded if the action or proceeding is one which happens to involve rights in addition to those secured by a provision of the Rehabilitation Act. In other words, Section 505. is not explicitly limited to actions which can be brought *only* under a Rehabilitation Act provision, such as Section 504, and no other, such as the EHA. The statute could have been so limited, if that were the intent, since both the EHA and Section 504 were already in existence, as were their coordinated and consistent regulations. It was not limited, however, and any limitations must be sought elsewhere. No regulations have been promulgated under Section 505, and examination of the legislative history of this section reveals no such limitations. To the contrary, the author of the attorney's fee provision stated,[6]

> Such allowance of attorney's fees would be an important step in assisting all handicapped individuals in their struggle by permitting equal access to the courts to enforce the provisions of title V of the Rehabilitation Act·of 1973 . . . .
>
> . . . .
>
> This amendment . . . will go a long way toward assisting long-neglected Americans—handicapped individuals—in their efforts to achieve their full and equal

share of the rights to which they are entitled."

(Remarks of Sen: Cranston, 124 Cong.Rec. 30346–47 (1978)).[7] In light of such an express intent to aid *all* handicapped individuals, including handicapped children seeking an appropriate educational placement, this court cannot construe Section 505 as inapplicable merely because a parallel claim was successfully brought under the EHA.

In sum, neither the EHA nor its legislative history indicates that the EHA was intended to be exclusive when compared to Section 504, and the authors of the EHA's regulations think otherwise. The Section 504 regulations do not defer to the EHA procedures, but merely refer to them in creating separate rights which may be independently or concurrently vindicated. The attorney's fee provision itself, Section 505, ·is not restricted to Rehabilitation Act cases with no concommitant EHA rights, but instead was enacted to benefit all handicapped individuals, including handicapped children such as Renee Patsel. The attorney's ˙fee provision of the Rehabilitation Act, Section 505, may serve as a basis for plaintiffs' claim for fees in this case.

It is unquestioned that plaintiffs were the "prevailing parties" on all of their claims. Had they not brought this action, the District of Columbia Public Schools would have denied them·the right to a due process hearing on behalf of their handicapped child, guaranteed by the EHA, Section 504 and *Mills v. Board of Education of District of Columbia, supra.*

---

**6.** See *Woodwork Manufacturer's Assoc. v. NLRB,* 386 U.S. 612, 640, 87 S.Ct. 1250, 1266, 18 L.Ed.2d 357 (1967) ("[I]t is the sponsors that we look to when the meaning of the statutory words is in doubt"); *Federal Energy Admin. v. Algonquin SNG, Inc.,* 426 U.S. 548, 564, 96 S.Ct. 2295, 2304, 49 L.Ed.2d 49 (1975) ("[A] statement of one of the legislation's sponsors . . . deserves to be accorded substantial weight in interpreting the statute.")

**7.** These remarks were made on the floor of the Senate during debate over S.B. 2600, the Senate version of the 1978 amendments to the Rehabilitation Act. The Senate version of the attorney's fees provision authored by Sen.

Cranston—with additions not relevant here— was the one agreed to by both Houses in conference and later enacted. Sen. Cranston's statements were repeated, nearly verbatim, by Sen. Stafford in remarks inserted into the Congressional record concerning the Senate's passage of the final version of the amendments adopted in conference, referenced H.R. 12467. (Remarks of Sen. Stafford, 124 Cong.Rec. 37507–08 (1978).) Sen. Cranston also inserted remarks into the record of the Senate's approval of the conference bill which emphasized the continuing applicability of his earlier· statements. (Remarks of Sen. Cranston, 124 Cong. Rec. 37509 (1978)).

Attorney's fees in this circuit are to be calculated according to the "lodestar" approach set forth in *Copeland v. Marshall*, 205 U.S.App.D.C. 390, 641 F.2d 880 (D.C.Cir. 1980) ("Copeland III"). This approach begins with "the number of hours reasonably expended multiplied by a reasonable hourly rate." *Id.*, 205 U.S.App.D.C. at 401, 641 F.2d at 891. Plaintiffs have not argued for any upward deviation from this formula, and defendants present no reasoned basis for a downward adjustment; as such, the "lodestar" formula shall be followed here. *Id.*, 205 U.S.App.D.C. at 402, 641 F.2d at 892; *Fells v. Brooks, supra*, 522 F.Supp. at 37.

The Court finds that the hours expended by counsel for his activity in this matter, including appearances in court and at a due process hearing, as set forth in detail in a declaration filed by him, are eminently reasonable. The Court also finds that reason and justice support the requested hourly rate of $80.00 for counsel's time, a sum fairly appropriate to the efforts expended, the experience of counsel, the results achieved and like hour rates awarded in similar cases. While not constricted by time or mandate, it is of interest that this same counsel's time was valued at $75.00 per hour by another judge in 1981 in *Fells v. Brooks, supra.*

It is therefore, by the Court, this 21st day of January, 1982, hereby

ORDERED, that plaintiffs be awarded $2,875.65 in attorney's fees and costs[8], defendants to pay said amount directly to plaintiffs' counsel, and counsel to reimburse plaintiffs for any amounts already paid by them to him.

---

**8.** The sum of $2,875.65 represents $2,860.00 attorney's fees for 35.75 hours at $80.00 per hour and $15.65 costs reasonably expended.