**Christopher TURILLO and Margaret Turillo, next best friends of Christopher Turillo**

v.

**Rena TYSON, C. Peterson, J. D. Canterell, Joann M. Head, Thomas M. Foley, Jamestown School Committee, Bradley Hospital.**

**Civ. A. No. 81–0356.**

United States District Court, D. Rhode Island.

March 29, 1982.

---

Sister Arlene Violet, Providence, R. I., for plaintiffs.

Amato DeLuca, Warwick, R. I., Henry Swan, Providence, R. I., for defendants.

OPINION

PETTINE, Chief Judge.

This case presents a difficult question pertaining to the award of attorney's fees in an action brought to obtain a free appropriate public education for a handicapped child. More precisely, the question here is whether attorney's fees are available to a prevailing plaintiff for work performed in connection with state administrative proceedings required by the Education for All Handicapped Children Act, 20 U.S.C. §§ 1401 et seq. (the "EAHCA"). I conclude that attorney's fees may be awarded for work performed in EAHCA administrative proceedings, pursuant to 42 U.S.C. § 1988.

I

This is an action brought by plaintiffs on behalf of their 10 year old son, Christopher. Christopher, who suffers from severe mental and emotional problems, attended the Meeting Street School from February 5, 1975 until February 1979. Christopher progressed during his years at Meeting Street School, and defendant Jamestown School Committee funded the cost of his education there.

In February 1979, Christopher began experiencing emotional difficulties which caused his parents to place him first in Meeting Street School's Respite Care Program, and then Bradley Hospital, the co-defendant in this action. Although the school committee refused to pay for this placement, Bradley Hospital allowed Christopher to remain there until the commencement of this case.

Sometime in the late spring of 1981, Bradley Hospital informed plaintiffs that, unless his bills were paid, Christopher would be discharged on June 10, 1981. Plaintiffs filed a complaint and a request for a temporary restraining order in this Court on June 9, 1981, claiming that the school committee had violated Christopher's rights under the Fourteenth Amendment and under three federal statutes: the EAHCA; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and 42 U.S.C.

§ 1983. On June 10, 1981, this Court issued a temporary restraining order enjoining Bradley Hospital from releasing Christopher and requiring defendant school committee to pay for the placement. The order was renewed twice. On July 2, 1981, the parties agreed that plaintiffs should move for partial summary judgment, and, in the meantime, the school committee would continue to fund Christopher's placement at Bradley Hospital.

Various motions, objections, and affidavits were filed in connection with the partial summary judgment proceeding. Meanwhile, more important developments were occurring in the state administrative proceedings which had also been commenced on June 9, 1981. First, the school committee agreed to a new individualized education program pursuant to which Christopher's placement at Bradley Hospital would be paid for prospectively. Furthermore, on July 23, 1981, the impartial hearing officer found that defendant school committee was responsible for Christopher's placement at Bradley Hospital for the period subsequent to June 18, 1980. On appeal, the Rhode Island Department of Education held the school committee liable for Christopher's placement from February 29, 1980, the date when Christopher's placement at Bradley Hospital began. In an order dated September 11, 1981, the Court dismissed plaintiff's complaint on the ground of mootness. Ten days later, plaintiffs moved for an award of attorney's fees for time spent before both this Court and the state administrative tribunals.

## II

Plaintiffs have not clearly indicated what the basis for an award of attorney's fees is in this action. The EAHCA itself does not provide for an award of attorney's fees. *Hymes v. Harnett County Board of Education,* 664 F.2d 410, 412 (4th Cir. 1981); *Tatro v. Texas,* 516 F.Supp. 968, 981 (N.D.Tex. 1981); *Anderson v. Thompson,* 495 F.Supp. 1256, 1268–70 (E.D.Wis.1980), *aff'd,* 658 F.2d 1205 (7th Cir. 1981). There are, however, two possible alternative bases for the award of fees. First, plaintiffs might be entitled to attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.[1] Second, plaintiffs might be entitled to fees under § 505(b) of the Rehabilitation Act of 1973, 29 U.S.C. § 794a(b).[2] I will discuss each theory in turn.

### A.

■ Plaintiffs' claim for relief under 42 U.S.C. § 1983 has two components. First, § 1983 might be available to remedy violations of plaintiffs' substantive EAHCA rights, in particular the right to a free appropriate public education. 20 U.S.C. § 1412(1). Second, § 1983 might be available to remedy a violation of plaintiffs' rights to the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

The EAHCA is a law of the United States, and § 1983 is generally available to remedy violations of such laws. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). But it is now settled that "[w]here the remedial devices provided in a particular act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy

---

1. In any action or proceeding to enforce a provision of sections 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes [42 U.S.C. §§ 1981–1983, 1985, 1986] title IX of Public Law 92–318 [20 U.S.C. §§ 1681 et seq.] or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code [26 U.S.C. §§ 1 et seq.], or title VI of the Civil Rights Act of 1964 [42 U.S.C. §§ 2000d et seq.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
42 U.S.C. § 1988.

2. In any action or proceeding to enforce or charge a violation of a provision of this title [29 U.S.C. §§ 790 et seq.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. · 29 U.S.C. § 794a(b).

of suits under § 1983." *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981). The EAHCA's remedial devices are sufficiently comprehensive to infer congressional intent to withdraw the § 1983 remedy.

The EAHCA sets forth a detailed remedial scheme in 20 U.S.C. § 1415. That section encourages resolution of disputes at the local level. Parents are given the right to be involved in the initial determination of an individualized educational program for their handicapped child. 20 U.S.C. § 1415(b)(1)(A). The school system must give the parents prior notice of any change in the child's educational placement. 20 U.S.C. § 1415(b)(1)(C), and must be given an opportunity to present complaints to the school authorities. 20 U.S.C. § 1415(b)(1)(E). If the parents are not satisfied with the school's response, they are entitled to a due process hearing before an impartial hearing officer. 20 U.S.C. § 1415(b)(2). If the hearing is held by the local educational agency or an intermediate educational unit, the aggrieved party may appeal to the State educational agency. 20 U.S.C. § 1415(c). After a decision by the State agency, an aggrieved party may bring an action in federal district court. 20 U.S.C. § 1415(e)(2). These procedures are elaborated in regulations, 45 C.F.R. Part 121a, required by statute. 20 U.S.C. § 1417(b).

The States are also commanded to file plans detailing their compliance with the EAHCA, 20 U.S.C. § 1413, and the Commissioner of Education must find that the plans comply with the statute. 20 U.S.C. § 1412. If a State fails to comply, the Commissioner is authorized to withhold federal funds from the State educational agency. 20 U.S.C. § 1416. The State may bring an action challenging this decision in the court of appeals for the circuit in which the State is located. 20 U.S.C. § 1416(b).

These two detailed remedies clearly indicate congressional intent to enforce the EAHCA only by the procedures detailed therein, and 42 U.S.C. § 1983 is therefore not available to redress violations of the EAHCA. *Hymes v. Harnett County Board of Education,* 664 F.2d 410 (4th Cir. 1981) (finding, however, a § 1983 action for preliminary relief); *Akers v. Bolton,* 531 F.Supp. 300 (D.Kan. Nov. 13, 1981); *Tatro v. Texas,* 516 F.Supp. 968, 981–84 (N.D.Tex. 1981). Consequently, attorney's fees may not be awarded to plaintiffs under § 1983 to redress defendants' violation of the EAHCA.

Plaintiffs have also alleged, however, a violation of the equal protection clause of the Fourteenth Amendment. Plaintiffs need not show that they prevailed on the substance of the constitutional claim. Instead, they need only show that their constitutional claim was "substantial". *Maher v. Gagne,* 448 U.S. 122, 132, 100 S.Ct. 2570, 2576, 65 L.Ed.2d 653 (1980). "Substantial" in this context has the same meaning it had in *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). H.R.Rep.No. 1558, 94th Cong., 2d Sess. 4 n.7 (1976). According to the *Hagans* Court:

"In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281. A claim is insubstantial only if ' "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." ' *Ex parte Poresky, supra* [290 U.S. 30] at 32, 54 S.Ct. [3] at 4 [78 L.Ed. 152], quoting from *Hannis Distilling Co. v. Baltimore, supra,* 216 U.S. [285] at 288, 30 S.Ct. [326] at 327 [54 L.Ed. 482], see also *Levering & Garrigues Co. v. Morrin,* 289 U.S. 103, 105–106, 53 S.Ct. 549, 550, 77 L.Ed. 1062 (1933); *McGilvra v. Ross,* 215 U.S. 70, 80, 30 S.Ct. 27 [31], 54 L.Ed. 95 (1909)." *Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 858–859, 35 L.Ed.2d 36 (1973).

*Hagans v. Lavine*, 415 U.S. at 537–38, 94 S.Ct. at 1379.

Plaintiffs' constitutional claim, although questionable, cannot be said to be inescapably frivolous.

In passing the EAHCA, the Senate Labor and Public Welfare Committee noted with approval two district court decisions guaranteeing handicapped children the right to a free appropriate public education. Sen. Rep.No.168, 94th Cong., 1st Sess. 6, *reprinted in* [1975] U.S.Code Cong. & Ad.News 1425, 1430. In *Pennsylvania Association for Retarded Children v. Pennsylvania*, 343 F.Supp. 279 (E.D.Pa.1972) (3 judge court), the plaintiffs challenged Pennsylvania's exclusion of retarded children from public school on constitutional grounds. Although a settlement was entered into entitling the plaintiffs to much of the relief they requested, it does not appear that a constitutional entitlement to a free appropriate public education was the basis of that agreement. But, in the other case mentioned in the Senate Report, the court held that the equal protection of the laws (as applied to the District of Columbia through the due process clause of the Fifth Amendment) required the provision of "adequate alternative educational services suited to the child's needs, which may include special education or tuition grants." *Mills v. Board of Education*, 348 F.Supp. 866, 878 (D.D.C. 1972). While *Mills* has been criticized, *New York Association for Retarded Children v. Rockefeller*, 357 F.Supp. 752, 762–764 (E.D. N.Y.1973), it has continuing vitality in the District of Columbia. *See Foster v. District of Columbia Board of Education*, 523 F.Supp. 1142, 1144 (D.D.C.1981); *North v. District of Columbia Board of Education*, 471 F.Supp. 136, 140 n.5 (D.D.C.1979).

Neither the Supreme Court nor the Court of Appeals for the First Circuit have decided whether there is a constitutional right to a free appropriate public education. This is not surprising, considering that passage of the EAHCA largely mooted the constitu-

tional question. The existence of a constitutional right is probably difficult to prove. There is no fundamental right to a free appropriate public education. *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 29–37, 93 S.Ct. 1278, 1294–1299, 36 L.Ed.2d 16 (1973). Strict scrutiny analysis therefore can be triggered only if handicapped children constitute a suspect class. At least one court has held that they do not. *Sherer v. Waier*, 457 F.Supp. 1039, 1047 (W.D.Mo.1978). Applying traditional scrutiny analysis, plaintiffs would have to show they were deprived of an educational opportunity granted non-handicapped children. Defendants have not prevented Christopher from attending the public school system. But it might be said that by attending public schools, non-handicapped children are enjoying an appropriate education, and that this is what Christopher has been deprived of.

Be that as it may, enough has been said to establish that plaintiffs have made a substantial constitutional claim even if that claim ultimately would not have prevailed. Plaintiffs are therefore entitled to attorney's fees to the extent they have prevailed in "an action or proceeding to enforce" their § 1983 claim. 42 U.S.C. § 1988. Plaintiffs are certainly entitled to fees for the work performed in connection with obtaining preliminary relief in this Court.[3] The hard question is whether plaintiffs are also entitled to attorney's fees for work performed in connection with the state administrative proceedings required by the EAHCA.

The issue is whether these state administrative proceedings are "proceeding[s] to enforce" the equal protection claim. 42 U.S.C. § 1988. Plaintiffs were required to exhaust their EAHCA remedies before bringing their § 1983 action. *Harris v. Campbell*, 472 F.Supp. 51, 55 (E.D.Va.1979). Any other conclusion would require the court to "undertake unnecessary adjudica-

---

**3.** The EAHCA does not provide for a preliminary injunction ordering a new educational placement. *Stemple v. Bd. of Ed.*, 623 F.2d 893, 898 (4th Cir. 1980). Thus, preliminary relief could only have been awarded under § 1983 or under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, both of which are fee-generating statutes.

tion of federal constitutional questions" whenever plaintiffs chose to bypass the state EAHCA proceedings. *City of Mesquite v. Aladdin's Castle, Inc.,* —— U.S. ——, ——, 102 S.Ct. 1070, 1077, 71 L.Ed.2d 152 (1982). More important, to not require exhaustion would do violence to congressional intent as expressed in the EAHCA. Congress wanted these matters handled, if possible, at the local level and constructed an elaborate procedural apparatus to facilitate local resolution.[4] 20 U.S.C. § 1415.

Because exhaustion of these EAHCA administrative remedies is essential if plaintiffs are to prevail on their constitutional claim, work done in connection with these proceedings is compensable under § 1988. Support for this conclusion is provided by *New York Gaslight Club v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). The *Carey* Court held that attorney's fees are awardable for work done in connection with state administrative proceedings mandated by Title VII of the Civil Rights Act of 1964. The Court reasoned that because initial resort to state proceedings was required by the statute, "[o]nly authorization of fee awards ensures incorporation of state procedures as a meaningful part of the Title VII enforcement scheme." *Id.* at 65, 100 S.Ct. at 2032. Significantly, fees were awardable in connection with "any action or proceeding under" Title VII. 42 U.S.C. § 2000e–5(k).[5] The Court concluded that

Title VII authorized a plaintiff to bring an action for attorney's fees even if she prevailed on all claims in the state administrative proceedings. *Id.* at 66, 100 S.Ct. at 2032.

Recently, the Court of Appeals for the Ninth Circuit applied the *Carey* holding to the § 1983 setting. In *Bartholomew v. Watson,* 665 F.2d 910 (9th Cir. 1982), the court held that § 1988 attorney's fees were awardable for work performed in state court on state law claims when the state court action was resorted to as a result of *Pullman* abstention. The EAHCA proceedings here are just as much a part of plaintiffs' § 1983 claim as was the state court action a part of the § 1983 claim in *Bartholomew.* Research has produced only three decisions on whether work performed in connection with EAHCA administrative hearings is compensable under § 1988. All three courts awarded fees. *Department of Education v. Katherine D.,* 531 F.Supp. 517 (D.Haw.1982); *Patsel v. District of Columbia Board of Education,* 530 F.Supp. 660 (D.D.C.1982); *Hilden v. Evans,* 3 EHLR 552:299 (D.Or.1980). Plaintiffs here are also entitled to attorney's fees for work performed in connection with the state EAHCA proceedings.[6] A hearing will be held on Friday, April 23, 1982 at 11:30 a. m. to determine the amount of these fees.

---

**4.** The exhaustion question here is dramatically different from that presented in *Patsy v. Florida International Univ.,* 634 F.2d 900 (5th Cir. 1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 88, 70 L.Ed.2d 81 (1981). In *Patsy,* the court required the plaintiff to exhaust her state-mandated administrative remedies. Here, by contrast, the administrative remedies are mandated by Congress. Unlike the states, Congress has the power to modify § 1983 procedures.

**5.** *Compare Kennedy v. Whitehurst,* 509 F.Supp. 226 (D.D.C.1981) (fees not awardable for work performed in connection with administrative proceedings required by Age Discrimination in Employment Act; statute only authorized fees in connection with "actions").

**6.** Another theory supporting the award of attorney's fees is suggested by *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760 (7th Cir. 1982). There the plaintiffs were awarded Title VII attorney's fees for work performed persuading the federal

government to debar the defendant from its federal contract. The court reasoned that the threatened contract debarment was a substantial element in the defendant's decision to settle the plaintiffs' Title VII suit. Thus, even though the debarment action was not mandated by Title VII, attorney's fees could be awarded for work done in connection with the debarment proceedings. The lesson appears to be that anything which their attorneys do to help the plaintiff charging a violation of a fee-generating statute prevail can be the basis of an award of attorney's fees. Thus, even if plaintiffs here were not required to exhaust their EAHCA remedies before bringing a § 1983 action, work done in connection with the EAHCA remedies might be the subject of an attorney's fees award because plaintiffs vindicated their constitutional rights by winning on their EAHCA claim.

## B.

Plaintiffs also request attorney's fees pursuant to § 505(b) of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 749a(b).[7] In order to obtain fees in this case, it must be shown that: 1) the Rehabilitation Act provides a private cause of action;[8] 2) exhaustion of EAHCA remedies is required in order for plaintiffs to bring their action; and 3) plaintiffs' rights under the Rehabilitation Act have been violated.

■ In § 504 of the Rehabilitation Act, 29 U.S.C. § 794, Congress provided that handicapped persons shall not be discriminated against in programs or activities receiving federal funds.[9] Congress did not, however, expressly grant plaintiffs a private cause of action to enforce their right to be free from discrimination. The question thus is whether Congress provided an implied cause of action in the Rehabilitation Act. Despite the lack of precedent in a controlling jurisdiction,[10] this is an easy question. Every appellate court deciding the question has found a private cause of action to enforce § 504. See, e.g., Miener v. Missouri, 673 F.2d 969 (8th Cir. 1982); Pushkin v. Regents of the University of Colorado, 658 F.2d 1372 (10th Cir. 1981); Kling v. County of Los Angeles, 633 F.2d 876 (9th Cir. 1980); Adashunas v. Negley, 626 F.2d 600, 603 (7th Cir. 1980); Camenisch v. University of Texas, 616 F.2d 127, 131 (5th Cir. 1980), vacated on other grounds, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); NAACP v. Medical Center, Inc., 599 F.2d 1247, 1258–59 (3d Cir. 1979); Davis v. Southeastern Community College, 574 F.2d 1158, 1159 (4th Cir. 1978), rev'd on other grounds, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); Leary v. Crapsey, 566 F.2d 863 (2d Cir. 1977).

7. I recognize that plaintiffs are only entitled to a single award of attorney's fees. Hymes v. Harnett County Bd. of Ed., 664 F.2d 410, 413 n.4 (4th Cir. 1981). But I also recognize that the fees award under § 1988 presents difficult questions to which the Court of Appeals for the First Circuit may have different answers. To avoid the possibility of piecemeal litigation, I find it advisable to discuss the alternative basis for an award of attorney's fees.

8. Plaintiff's private cause of action against the school board also can be found in 42 U.S.C. § 1983. That statute gives plaintiffs a remedy for every violation of federal law. Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Subsequent cases have developed two exceptions to this rule. Middlesex County Sewerage Auth. v. Nat. Sea Clammers Ass'n, 453 U.S. 1, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981); Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981). First, § 1983 does not provide a remedy if the federal law does not confer an enforceable right. Second, § 1983 does not provide a remedy if the right is created by a statute providing an exclusive remedy for its enforcement. Neither exception applies here. The language of § 504 of the Rehabilitation Act, 29 U.S.C. § 794, clearly grants handicapped persons the right to be free from discrimination by recipients of federal funds. See Pushkin v. Regents of Univ. of Colorado, 658 F.2d 1372, 1380 (10th Cir. 1981). And, although the Rehabilitation Act allows aggrieved parties an administrative forum to petition for the cut-off of federal funds to discriminating recipients, 29 U.S.C. § 794a(a)(2), 45 C.F.R. § 84 et seq., it can hardly be said that this remedy is so "sufficiently comprehensive" that it "demonstrate[s] congressional intent to preclude the remedy of suits under § 1983." Middlesex County, supra, 101 S.Ct. at 2626.

I find it unnecessary to analyze the Rehabilitation Act right under § 1983. First, one party to this action, Bradley Hospital, is a private institution not subject to § 1983. Second, the standard for award of fees under 42 U.S.C. § 1988 for violations of the Rehabilitation Act remedied through § 1983 is presumably the same as for award of fees under 29 U.S.C. § 794a(b).

9. No otherwise qualified handicapped individual in the United States, as defined in section 7(7) [29 U.S.C. § 706(7)], shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .
29 U.S.C. § 794.

10. The Supreme Court found it unnecessary to decide this issue in Camenisch v. Univ. of Texas, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); Southeastern Community College v. Davis, 442 U.S. 397, 404 n.5, 99 S.Ct. 2361, 2366 n.5, 60 L.Ed.2d 980 (1979); and New York City Transit Auth. v. Beazer, 440 U.S. 568, 580 n.17, 99 S.Ct. 1355, 1363 n.17, 59 L.Ed.2d 587 (1979). Similarly, the Court of Appeals for the First Circuit avoided the issue in Mass. Coalition of Citizens v. Civil Defense Agency, 649 F.2d 71, 75 n.6 (1st Cir. 1981).

The judicial unanimity on this question is explained in large part by the decision in *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). There, the Supreme Court held that Title IX of the Education Amendments of 1972 contained an implied private cause of action. The operative language of Title IX is identical to that contained in § 504, except that Title IX speaks to sex discrimination while § 504 concerns handicap discrimination. *Compare* 20 U.S.C. § 1681(a) *with* 20 U.S.C. § 794. Agreeing that this analogy is persuasive, I join the impressive judicial consensus finding an implied cause of action to enforce the Rehabilitation Act.[11]

I also rule that § 504 actions must give way to EAHCA proceedings where the two statutes converge. Thus, if a school system discriminates on the basis of handicap by failing to provide wheelchair ramps in a school, thereby depriving a wheelchair-bound student of his right to a free appropriate public education, the plaintiff will be required to exhaust the state administrative remedies provided by the EAHCA before bringing a § 504 action. *See H. R. v. Hornbeck*, 524 F.Supp. 215, 221 (D.Md.1981); *Harris v. Campbell*, 472 F.Supp. 51, 55 (E.D. Va.1979).

I considered two alternatives to my holding that EAHCA remedies must be exhausted before bringing a § 504 action to redress discrimination which violates both the EAHCA and the Rehabilitation Act. First, plaintiffs could be allowed to ignore the EAHCA and bring an original § 504 action in federal court. This result is un-

satisfactory because Congress intended that the right to a free appropriate public education be determined, in the first instance, by local and State education officials. *See* 20 U.S.C. § 1415. Second, the EAHCA could be held to be the exclusive remedy for handicapped children aggrieved by their educational placement. This solution raises issues different from those addressed in *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), and *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). In those cases, it was held that 42 U.S.C. §§ 1983 and 1985(3) could not be used to enforce substantive rights conferred by statutes containing their own comprehensive enforcement schemes. Unlike §§ 1983 and 1985(3), which are purely remedial devices, the Rehabilitation Act contains its own substantive rights. I am therefore unwilling to hold that the EAHCA impliedly repealed these rights insofar as they apply to the education of handicapped children. *But cf. Brown v. GSA*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (for federal employees, Title VII displaced 42 U.S.C. § 1981).

The EAHCA proceedings are therefore an integral part of the enforcement of Rehabilitation Act rights in the field of education. It is obvious, then, that these proceedings are "proceeding[s] to enforce or charge a violation of" the Rehabilitation Act. 29 U.S.C. § 794a(b). Just as the plaintiff in *New York Gaslight Club v. Car-*

---

11. Plaintiffs were not required to exhaust the administrative procedures established by the Rehabilitation Act. 29 U.S.C. § 794a(a)(2) provides individuals aggrieved under the Rehabilitation Act with the remedies, procedures and rights set forth in Title VI of the Civil Rights Act of 1964. These procedures do not give individual relief; instead, they are geared toward terminating or suspending federal funding of discriminatory programs. 45 C.F.R. § 84 *et seq.* In *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), the Court implied a private cause of action under Title IX of the Education Amendments of 1972 without requiring exhaustion of the Title VI remedies which are also available to Title IX

plaintiffs. The lack of individual relief in the Title VI remedies and the analogy to *Cannon* have impelled several appellate courts to hold that exhaustion of Title VI remedies is not required before bringing a private action under § 504. *See Pushkin v. Regents of Univ. of Colorado*, 658 F.2d 1372, 1380–82 (10th Cir. 1981); *Kling v. County of Los Angeles*, 633 F.2d 876, 879 (9th Cir. 1980); *Adashunas v. Negley*, 626 F.2d 600, 603 (7th Cir. 1980); *Camenisch v. Univ. of Texas*, 616 F.2d 127, 132 (5th Cir. 1980), *vacated as moot*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). I agree with the reasoning of these courts and hold that exhaustion of the Title VI remedies is not required.

*ey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), was entitled to attorney's fees for work done in state administrative proceedings, plaintiffs who are required to exhaust their EAHCA remedies before bringing a § 504 action are entitled to attorney's fees for work performed in connection with the state administrative proceedings.

To be entitled to these fees, however, plaintiffs must show that they would have prevailed on the § 504 claim if it had been fully litigated. It is not enough to show that they prevailed on their EAHCA claim.[12] On the facts presented here, I hold that plaintiffs could not have prevailed on their § 504 action.

The analysis must begin with *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), the only Supreme Court opinion construing the scope of § 504. In *Davis*, the plaintiff, a deaf woman, sought admission to the nursing program at Southeastern Community College. In order to permit the plaintiff to participate in the program in a meaningful way, the program would have had to have been substantially modified. The Court was persuaded that this relief was not required by § 504.

The Court noted that Congress recognized "the distinction between the even-handed treatment of qualified handicapped persons and affirmative efforts to overcome the difficulties caused by handicaps." *Id.* at 410, 99 S.Ct. at 2369. While Congress provided in §§ 501(b) and 503(a) of the

Rehabilitation Act that the federal government and federal contractors would be required to take affirmative efforts to assist handicapped persons, § 504 did not. Thus, to the extent that the HEW regulations applying § 504 imposed an affirmative obligation on states receiving federal funds, these regulations were unauthorized. *Id.* at 411–12, 99 S.Ct. at 2369–2370.

The Court did not fashion a rule lower courts could follow in applying § 504. This is understandable because the question of handicap discrimination raises problems more difficult than those involved in the context of other forms of discrimination. As Judge Devine observed, two coherent tests could be applied to reach equally extreme results:

First, as in the consideration of questions of race, courts could insist on blindness to all handicaps, allowing (or requiring) all individuals, regardless of their handicaps, to succeed or fail on the basis of their ability, with no special help from external sources. Such a system harkens back to Social Darwinism. On the other extreme, the law could require equality of results among all handicapped and nonhandicapped persons. This second scenario would call for an unlimited amount of resources for special aids and individualized training, and could produce such absurd results as blind bus drivers.

*Garrity v. Gallen*, 522 F.Supp. 171, 207 (D.N.H.1981).

---

**12.** This standard is different from the test applied when the fee-generating claim is a constitutional one. There, all that need be shown is that the constitutional claim is "substantial". *Maher v. Gagne*, 448 U.S. 122, 132, 100 S.Ct. 2570, 2576, 65 L.Ed.2d 653 (1980). But,

> [t]o the extent a plaintiff joins a claim under one of the statutes enumerated in H.R. 15460 with a claim that does not allow attorney fees, that plaintiff, if it prevails on the non-fee claim, is entitled to a determination on the other claim for the purpose of awarding counsel fees. *Morales v. Haines*, 486 F.2d 880 (7th Cir. 1980).
> H.R.Rep.No.1588, 94th Cong., 2d Sess. 4 n.7 (1976).

Congress evidently thought that there must be a determination on the merits of the fee-gener-

ating claim. My research has not discovered any case since *Morales* that decided whether a plaintiff prevailing on a non-fee-generating statute must state a non-frivolous claim under a fee-generating statute, or must show that it would have prevailed on the fee-generating claim. The rationale for requiring nothing more than a non-frivolous constitutional claim is the well-established reluctance of courts to decide constitutional questions when statutory grounds are dispositive. House Report, *supra*, at 4 n.7. This rationale does not apply to non-constitutional claims. I therefore hold that a plaintiff must show that it would have prevailed on a fee-generating claim in order to recover attorney's fees under either 42 U.S.C. § 1988 or 29 U.S.C. § 794a(b).

The *Davis* Court appears to have accepted a position somewhere between the two extremes. "We do not suggest," said the Court, "that the line between a lawful refusal to extend affirmative action and illegal discrimination against handicapped persons always will be clear." *Davis, supra,* 442 U.S. at 412, 99 S.Ct. at 2370. The Court noted that technological advances might allow modification of programs "without imposing undue financial and administrative burdens upon a State." *Id.* In that situation, "a refusal to modify an existing program might become unreasonable and discriminatory." *Id.* at 412–13, 99 S.Ct. at 2370. Because substantial modifications in Southeastern's program would have been required to assist the plaintiff, the Court found that the defendant had acted reasonably.

Despite the restrictive construction given § 504 by *Davis,* some courts have found that the Rehabilitation Act guarantees handicapped children a free appropriate public education. *See S–1 v. Turlington,* 635 F.2d 342, 347 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981); *Patsel v. District of Columbia Board of Education,* 530 F.Supp. 660 (D.D.C.1982); *Association for Retarded Citizens v. Frazier,* 517 F.Supp. 105, 118–19 (D.Colo.1981); *New Mexico Association for Retarded Citizens v. New Mexico,* 495 F.Supp. 391, 396 (D.N.M.1980). These courts rely, in large part, on the HHS regulations implementing § 504 in the area of public education. *See* 45 C.F.R. Part 84; *Frazier, supra,* at 120–23. These regulations, however, cannot grant more than Congress intended to grant in § 504. *University of Texas v. Camenisch,* 451 U.S. 390, 101 S.Ct. 1830, 1835–36, 68 L.Ed.2d 175 (1981) (Burger, C. J., concurring); *Southeastern Community College v. Davis,* 442 U.S. 397, 411–12, 99 S.Ct. 2361, 2369–2370, 60 L.Ed.2d 980 (1979); *see American Public Transit Association v. Lewis,* 655 F.2d 1272, 1277 (D.C.Cir.1981) (DOT regulations implementing § 504 are invalid).[13]

I fail to see how, after *Davis,* § 504 can be construed to guarantee a free appropriate public education to all handicapped children, no matter what their individual needs are. *Accord, McGowen v. Hahn,* C.A. No. 78C433 (N.D.Ill. July 27, 1981) ("[T]he mere failure to provide special education services is not sufficient to state a claim under § 504"). *Davis* may not have provided lower courts with all the guidance they need, but it surely was clear on one point: § 504 is a non-discrimination statute, not a mandate for affirmative action. This does not mean that § 504 is confined to those instances where school systems invidiously discriminate against handicapped individuals by, for example, refusing to allow an otherwise qualified blind child to attend school. It does mean, though, that courts must find a way to limit the reach of § 504 consistent with the holding of *Davis.*

I believe that this can be done most effectively with a two-tier analysis. First, does the relief requested by the plaintiff require affirmative action? That is, is the defendant being asked to provide the plaintiff with a completely new service, or merely with modifications of an existing service provided to non-handicapped persons? If the plaintiff seeks modifications of an existing program, then the analysis moves to the second tier: do the modifications place an undue financial and administrative burden on the defendant? If they do not, then the plaintiff is entitled to relief. This analysis is consistent with *Davis.* There the plaintiff sought entry to the regular nursing program offered by Southeastern Community College. This satisfied the first tier of analysis. But because modification of the program would have required undue burdens on the school, plaintiff was not able to meet the test of the second tier.

I realize that it may not always be clear whether the plaintiff is requesting affirmative action or modifications of an existing program. But use of this two-tier analysis will have two salutary effects. First, it will confine § 504 claims to instances where

13. Notably, although the HHS regulations are intended to implement the Rehabilitation Act, 45 C.F.R. § 84.1, the statutes cited as authority for Part 84 include the EAHCA.

handicapped persons seek to be treated like everyone else. Only those instances in which handicapped persons are discriminated against will give rise to a § 504 claim. Second, this first tier will, in many instances, make it unnecessary for the court to undertake the difficult task of determining what constitutes an undue financial and administrative burden.

I therefore hold that plaintiffs here have not stated a § 504 claim because the relief they requested was a private placement for Christopher outside the public school system. While § 504 might require a school system to modify its schools to accommodate handicapped children, it never compels a school system to finance a private educational placement. *See Kruelle v. New Castle County School District*, 642 F.2d 687 (3d Cir. 1981) (dicta) (while EAHCA may require residential placement, § 504 does not). *Contra, Department of Education v. Katherine D.*, 531 F.Supp. 517 (D.Haw.1982) (private placement costing $1,200 per year is required by § 504).[14] Therefore, I hold that plaintiffs are not entitled to attorney's fees under 29 U.S.C. § 794a(b).

### III

Plaintiffs are entitled to attorney's fees for work performed in connection with state EAHCA proceedings under 42 U.S.C. § 1988. Plaintiffs had a substantial constitutional claim which could not be adjudicated until the EAHCA proceedings had been exhausted. The rationale of *New York Gaslight Club v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), required the award of attorney's fees in these circumstances.

Similarly, a plaintiff stating a proper Rehabilitation Act claim would have to exhaust the EAHCA remedy before bringing the § 504 action. Fees could be awarded under 29 U.S.C. § 794a(b) for work done in connection with the EAHCA proceedings. Here, however, plaintiffs have not shown a violation of § 504. The Rehabilitation Act does not authorize the type of affirmative relief plaintiffs requested. Attorney's fees, therefore, may not be awarded under 29 U.S.C. § 794a(b).

An order will be prepared accordingly.

---

**14.** The three Fifth Circuit decisions extending § 504 to the public education field are not necessarily inconsistent with this analysis, for, in all three cases, the § 504 claim passed the test of the first tier. In *S–1 v. Turlington*, 635 F.2d 342 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981), plaintiffs claimed that their expulsions from the public school system violated § 504. In *Tatro v. Texas*, 625 F.2d 557 (5th Cir. 1980), plaintiffs requested that their daughter be catheterized by school authorities so that she could attend public school. Similarly, in *Camenisch v. Univ. of Texas*, 616 F.2d 127 (5th Cir. 1980), *vacated as moot*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), plaintiff requested a deaf interpreter to assist him in his classes at the state university. Whether the relief granted in these cases imposed undue financial and administrative burdens is the sort of difficult question that need not be decided here. *See Pinkerton v. Moye*, 509 F.Supp. 107, 114 (W.D.Va.1981) (establishment of a "self-contained" educational program at local school is a substantial modification not required by § 504).