Norman DAVIS, on Behalf of his infant son, James DAVIS, Plaintiff,

v.

MAINE ENDWELL CENTRAL SCHOOL DISTRICT, Lawrence Rice, in his official capacity as President of the Board of Education for the Maine Endwell Central School District, William O'Connor, in his official capacity as Superintendent of Schools for the Maine Endwell Central School District, John Oakes, in his official capacity as Chairman of the Committee of the Handicapped, Defendants.

Norman DAVIS and Harriet Davis, for themselves and on behalf of their infant son, James DAVIS, Plaintiffs,

v.

MAINE ENDWELL CENTRAL SCHOOL DISTRICT, Eugene Murphy, Member of the Board of Education, Individually and in his official capacity; Lawrence Rice, Member of the Board of Education, Individually and in his official capacity; David Bohl, Member of the Board of Education, Individually and in his official capacity; Wanita Griffin, Member of the Board of Education, Individually and in her official capacity; Joseph Pastore, Member of the Board of Education, Individually and in his official capacity; Arthur Smith, Member of the Board of Education, Individually and in his official capacity; Ray Kwak, Superintendent of Schools, Individually and in his official capacity, John Oakes, Chairman of the Committee on the Handicapped, Individually and in his official capacity; and Donald Conning, Principal of the Maine Memorial School, Individually and in his official capacity, Defendants.

Nos. 80–CV–257, 80–CV–915.

United States District Court, N. D. New York.

July 1, 1982.

Ronald R. Benjamin, Binghamton, N.Y., for plaintiffs.

Hogan & Sarzynski, Binghamton, N.Y., for defendants; Edward J. Sarzynski, Jr., Binghamton, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

On November 17, 1981, the day before this case was ordered to proceed to trial before a jury, the Court granted defendants' motion to dismiss the complaint as to all causes of action alleged therein except the cause of action for deprivation of plaintiffs' First Amendment rights.[1] This memorandum sets forth the basis for the Court's decision in that regard.

## BACKGROUND

Plaintiff James Davis, a thirteen year old boy with special education needs, was first classified as being in need of special education services in 1976. It was the determination of the School District Committee on the Handicapped [COH] that, at that time, James suffered from learning disabilities. That classification was later changed by the COH to Emotionally Handicapped. It is that re-classification and the resultant placement of James which gave rise to these two lawsuits.

Believing that the COH's classification of James was caused by financial considerations rather than by James' educational needs, the plaintiffs filed suit in this Court

1. Although plaintiffs had maintained that a First Amendment violation had occurred, they had neglected to include that claim in their complaint. Accordingly, the Court at that time granted plaintiffs' motion to amend their complaint to set forth such a cause of action before ruling on the motion to dismiss.

to challenge that placement. *Davis v. Maine Endwell Central School District*, 80–CV–257. While in the process of pursuing their administrative remedies pursuant to the Education for All Handicapped Children Act, 20 U.S.C. §§ 1411–1420, plaintiffs sought a preliminary injunction from this Court placing James in what plaintiffs believed to be an appropriate placement. That request was denied by order of this Court dated May 6, 1980 on the Court's findings that plaintiffs had failed to exhaust their administrative remedies. The denial of the preliminary injunction was upheld on appeal by the Second Circuit Court of Appeals, 646 F.2d 560 (2d Cir. 1980). That Court, however, remanded the case to this Court for consideration of plaintiffs' claim to monetary relief. Judge Moore dissented from that portion of the opinion which remanded the case to this Court, it being his opinion that the complaint did not set forth a valid claim for monetary relief in either law or fact.

Still unhappy with the defendants' handling of James' educational needs, the plaintiffs filed a second suit in this Court on March 24, 1980 to challenge the classification and placement of James. *Davis v. Maine Endwell Central School District*, 80–CV–915. On April 2, 1981 plaintiffs filed an application with this Court for a preliminary injunction, the effect of which would be to change James' placement within the school district. Defendants cross moved for dismissal on the grounds of lack of jurisdiction and failure to exhaust administrative remedies, as well as failure to state a claim upon which relief could be granted. Once again the Court denied plaintiffs' motion for a preliminary injunction for failure to exhaust administrative remedies. This denial was upheld by the Second Circuit on appeal, 671 F.2d 491 (2d Cir. 1981).

Following a series of motions and meetings of the parties with the Court, this case came on to be tried in November of 1981. Because of a failure to exhaust administrative remedies in relation thereto the plaintiffs at that time withdrew their claim for injunctive relief. There then remained the plaintiffs' claim for money damages based on the defendants' alleged violation of plaintiffs' rights under the Education for All Handicapped Children Act, 20 U.S.C. §§ 1411–1420; The Rehabilitation Act of 1973, 29 U.S.C. § 794, and the First and Fourteenth Amendments to the United States Constitution. Prior to trial the Court granted defendants' motion to dismiss all of plaintiffs remaining claims except that alleging a violation of plaintiffs' First Amendment rights. The case then continued on to trial on the sole issue of whether a First Amendment violation had occurred. The trial lasted in excess of three weeks and culminated in a jury verdict in favor of the plaintiffs as against the Maine Endwell Central School District. Damages were assessed at $50,000.

## DISCUSSION

### EDUCATION FOR ALL HANDICAPPED CHILDREN ACT

Plaintiffs first claimed that the defendants had violated James' right to a free and appropriate education as established by the Education for All Handicapped Children Act, 20 U.S.C. §§ 1411–1420 [EAHCA]. That Act mandates that each state participating in this voluntary program have "in effect a policy that assures all handicapped children the right to a free and appropriate public education." 20 U.S.C. § 1412. New York has elected to participate in this program and has, therefore, assumed the responsibility of providing a free and appropriate education to its resident handicapped children between the ages of three and twenty-one. *Id.* There is no question in the instant case that James Davis is a handicapped child within the meaning of the Act and that he is entitled to a free and appropriate education. The controversy centers on whether the education provided him by the defendants was appropriate. Plaintiffs claim that the education was not appropriate and that they are, therefore, entitled to money damages from the defendants as a result of the alleged misclassification and misplacement of James.

Plaintiffs base their claim for money damages on the language of section 1415 of the EAHCA. That section sets out the procedural safeguards established by the Act and provides aggrieved parties access to the state and federal courts after exhaustion of administrative remedies.[2] Section 1415 provides that "[i]n any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2). Plaintiffs read this section as authorizing the Court to award monetary damages when an improper classification or placement decision has been made. Conversely, the defendants contend that damages are not an appropriate remedy within the meaning of the EAHCA.

Resolution of this dispute necessarily turns on the language of the statute. *Cannon v. University of Chicago*, 441 U.S. 677, 689, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). The Court's focus is not limited to merely the words of the statute, however. As the Second Circuit recently stated:

> [t]o construe a statute we look first to the words actually used by the drafters, remembering that words are but signs that point to ideas. We may also examine the statute's legislative history to ensure that the meaning we have ascribed to these words fits their purpose, as that was what Congress intended.

*Pompana v. Michael Schiavone & Sons, Inc.*, 680 F.2d 911, 913 (2d Cir. 1982). Finding that the signs in the statute under review are less than clear, an examination of the legislative history is necessary to fully understand their meaning. In conducting this examination, the Court views the analysis of the Seventh Circuit Court of Appeals in the case of *Anderson v. Thompson*, 658 F.2d 1205 (7th Cir. 1981) as persuasive.

The *Anderson* court first noted that neither the language of the statute nor the legislative history contain any mention of damages. *Id.* at 1211; *see also Loughran v. Flanders*, 470 F.Supp. 110, 114 (D.Conn. 1979). Looking at the "mischief to be corrected and the goals to be attained" citing *Warner v. Goltra*, 293 U.S. 155, 158, 55 S.Ct. 46, 47, 79 L.Ed. 254 (1934), the Court concluded that a damage remedy was not "consistent with the goals of the statute." 658 F.2d at 1213. This Court agrees.

As noted by the *Anderson* court, the main goal of Congress in enacting the EAHCA was to meet the needs of handicapped children; the focus of the Act is insuring that handicapped children receive an appropriate education through proper classification and placement. Congress did not fail to recognize the difficult task it was delegating to the states. Not only does such an endeavor impose financial obligations upon the states, it also requires them to make difficult educational judgments with respect to the children in their care.

■ Congress sought to aid the states in implementing the EAHCA. First, it established a program of federal financial assistance through the Act. See 20 U.S.C. § 1411. Second, Congress established a set of procedural safeguards to ensure that the appropriate classification and placement decision had been made. See 20 U.S.C. § 1415. Thus, the emphasis was on helping the states achieve compliance with the requirements of the EAHCA, not with establishing a system of punishment for non-compliance. This strongly suggests that Congress did not intend the punitive remedy of damages to be included within the phrase "appropriate relief". As was stated by the *Anderson* Court:

> [i]n short, Congress enacted the EAHCA in order to aid the states in educating their handicapped children by providing the necessary funds. The legislative history shows an emphasis on procedural safeguards to ensure appropriate place-

2. For a discussion of the exhaustion requirement, see this Court's previous opinions in this case, *Davis v. Maine Endwell Central School District*, 80–CV–257 (filed May 6, 1980); *Davis v. Maine Endwell Central School District*, 80–CV–915 (filed May 7, 1981).

ments, a recognition that diagnosis of special education problems was difficult and uncertain, an awareness of severe budgeting constraints, and an acknowledgement that it would take time for all handicapped children to be helped. In those circumstances, and without even a word of discussion about damages, we infer that that remedy was not generally intended.

. . . A damage remedy is not, in our view, generally consistent with the goals of this statute. When a school district makes a good faith effort to provide a child with an appropriate education, we do not believe that as a general rule it is good policy to require that a school district pay money damages if it later turns out that a different programming decision should have been made. Moreover, in as new and undeveloped a field as special education, there is a need for flexibility and experimentation in programming for handicapped children. We take judicial notice of the fact that at the present time, problems of classification and treatment abound. Disagreements will arise and errors will be made. In short, we perceive that educational programs for the handicapped will suffer if school officials, for fear of exposing themselves to monetary liability for incorrect placements, hesitate to implement innovative educational reforms. *See Loughran v. Flanders*, 470 F.Supp. 110 (D.Conn.1979). For this reason, implying a general damage remedy would hinder rather than help the very children for whose benefit the statute was enacted.

*Anderson*, 658 F.2d at 1213 (footnote omitted).[3] This Court agrees with the reasoning of the Court in *Anderson* and accordingly holds that damages are not appropriate relief within the meaning of the EAHCA. *See also Meiner v. Missouri*, 673 F.2d 969 (8th Cir. 1982); *Ruth Anne M. v. Alvin Independent School District*, 532 F.Supp. 460 (S.D.Tex.1982).[4]

*Section 1983*

Plaintiffs next argue that if it is determined that money damages are not appropriate relief under section 1415 of the EAHCA, they may obtain the same by enforcing their rights under the EAHCA through 42 U.S.C. § 1983. This Court, again agreeing with the *Anderson* Court, holds that section 1983 is not available to the plaintiffs to enforce the EAHCA here.

Plaintiffs are correct in their contention that the application of section 1983 is not limited to Constitutional violations but may be used to enforce statutory rights. *See Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). However, the Supreme Court has recently held that section 1983 is inapplicable when the statute which the plaintiff seeks to enforce provides an exclusive remedy for violations thereof. *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). There the Court stated that: "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." 453 U.S. at 20, 101 S.Ct. at 2626. The question then becomes whether the remedial scheme provided in

**3.** The Seventh Circuit, in dicta, stated that it could envision two extraordinary circumstances in which damages might be available under the EAHCA: where the Court subsequently determines that the disputed services were necessary to protect the physical health of the child and were services which the school district should have provided; where the defendant has acted in bad faith by failing to comply with the procedural provisions of 20 U.S.C. § 1415 in an egregious fashion. *Anderson*, 658 F.2d at 1214. Because neither situation is present in the instant case, the Court need not decide whether

monetary awards are appropriate in those two extraordinary circumstances.

**4.** Since issuing the bench ruling in this case, Chief Judge Munson of the Northern District has issued an opinion in the case of *Quackenbush v. Johnson City School District*, 81–CV–1093 (filed Jan. 21, 1982). Notwithstanding Judge Munson's opinion, this Court is still convinced that damages are not available under the EAHCA and that 42 U.S.C. § 1983 is not available to enforce the rights conferred by the EAHCA.

the EAHCA is sufficiently comprehensive to demonstrate legislative intent that it be the plaintiff's sole remedy.

The remedial scheme of the EAHCA is set forth in 20 U.S.C. § 1415. That section, entitled procedural safeguards, requires that each participating educational agency establish and maintain procedures in conformity with the section "to assure that handicapped children and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies.... " *Id.* Those procedures include access by the parents or guardian to the handicapped child's records, the appointment of a surrogate to protect the rights of the child whenever the parent or guardian is unknown or unavailable; written notice to the parent or guardian prior to any change in or refusal to change the child's classification or placement and an opportunity to present complaints concerning the classification or placement of the child. If such a complaint is made, the parent or guardian has the right to an impartial due process hearing. Further, any party aggrieved by the findings and decision rendered in such a hearing has a right of appeal to the state educational agency. Finally, a person aggrieved after the appeal to the state agency may bring an action in state or federal court, where after review of the records of the administrative proceeding and the consideration of additional evidence presented by the parties, the Court "shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415.

This Court is in agreement with the decision of the Seventh Circuit that Congress intended the procedural safeguards set forth in the EAHCA to be plaintiff's exclusive remedy. *Anderson.* After discussion of the relevant U.S. Supreme Court cases, that Court concluded that:

The availability of a private right of action under the EAHCA the detailed statutory and administrative and judicial scheme, the fact that Congress intended the EAHCA to create new rights, and the absence of a traditional damage remedy, together compel our conclusion that the judicial remedy provided in the EAHCA was intended to be exclusive.

658 F.2d at 1217; *see generally Id.* at 1214–17; *see also Ruth Anne M. v. Alvin Independent School District,* 532 F.Supp. 460, 473–475 (S.D.Tex.1982). This Court adopts the rationale and decision of the Seventh Circuit that 1983 is not available to the plaintiffs to enforce their rights under the EAHCA.

*20 U.S.C. § 794*

Plaintiffs next argue that they are entitled to an award of damages under section 504 of the Rehabilitation Act for the defendants' alleged improper classification and placement of James. 29 U.S.C. § 794. That section provides that:

No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving financial assistance.

While section 504 does not expressly address the right of a handicapped child to a special education, the regulations implementing that section require that a recipient of federal funds "that operates a public elementary or secondary education program shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 45 C.F.R. § 84.33(b) (1981).[5]

■ It is well settled in this Circuit that there exists an implied cause of action to enforce section 504. *Leary v. Crapsey,* 566

5. This Court notes that there is some dispute as to whether the regulation requiring the provision of a free and appropriate education is valid in light of the Supreme Court's decision in *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979).

*See Turillo v. Tyson,* 535 F.Supp. 577 (D.R.I. 1982) and cases cited therein. Having determined that plaintiffs' 504 claims must be dismissed for failure to exhaust their administrative remedies under the EAHCA, it is unnecessary for this Court to make this determination.

F.2d 863 (2d Cir. 1977). The Second Circuit has not yet spoken to whether section 504 provides plaintiffs a damage remedy. This Court need not address this question, however, as it is the determination of this Court that Plaintiffs' claims under section 504 must be dismissed due to failure to exhaust their administrative remedies under the EAHCA.

In a well reasoned opinion, Chief Judge Pettine of the District of Rhode Island determined that when the EAHCA and § 504 of the Rehabilitation Act converge, the administrative remedies under the EAHCA must be exhausted prior to proceeding with a § 504 claim. *Turillo v. Tyson*, 535 F.Supp. 577 (D.R.I.1982). *See also Colin K. v. Schmidt*, 536 F.Supp. 1375, 1385 n.14 (D.R.I.1982). To allow a plaintiff to proceed on a section 504 claim for a free and appropriate education prior to the exhaustion of the EAHCA administrative remedies would work to eviscerate the procedural safeguards set forth in the EAHCA for the Court would be asked to make in the first instance the same determination which would be made at the administrative level. As noted by Judge Pettine, "[t]his result would be unsatisfactory because Congress intended that the right to a free and appropriate education be determined, in the first instance, by local and State education officials." *Id.* at 585. This is true even though the remedies sought under the two Acts are different. Accordingly, plaintiffs do not state a valid claim under 29 U.S.C. § 794.

*Constitutional Claims*

 Plaintiffs' final argument is that they are entitled to money damages as redress for the alleged violations of their Constitutional rights by the defendants. The plaintiffs elected to plead their Constitutional claims in a vague and cursory manner. For that reason, the Court required the plaintiffs, prior to trial, to elaborate upon their Constitutional claims. At a pretrial conference with the Court, plaintiffs'

counsel stated that two Constitutional claims were being advanced; the alleged violation of James' Fourteenth Amendment right to a free and appropriate education and the alleged violation of plaintiffs' First Amendment rights. Plaintiffs claimed that the defendants had engaged in a campaign of harassment conducted in retaliation for the plaintiffs' exercise of their First Amendment rights, i.e., filing the first law suit in this case. Finding that there exists no Constitutional right to a free and appropriate education, *see San Antonio Independent School District v. Rodriquez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), plaintiffs' Fourteenth Amendment claim was dismissed. Finding that plaintiffs had set out a valid First Amendment claim, the plaintiffs were permitted to go forward with that claim which resulted in the jury's verdict.[6]

---

**6.** The Court has read the Supreme Court's recent opinion in *Hendrick Hudson Central School District Board of Education v. Rowley*, ⸱ U.S. ⸱⸱ , 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) and finds nothing in that opinion to cause the Court to reconsider the decision in this case.